EMIL J. LORENCE, APPELLEE, v. OMAHA PUBLIC POWER DISTRICT, APPELLANT, IMPLEADED WITH IMPERIAL OUTDOOR ADVERTISING COMPANY, A CORPORATION, APPELLEE.

214 N. W. 2d 238

Filed January 11, 1974. No. 38991.

Fraser, Stryker, Marshall & Veach, for appellant.

Martin A. Cannon of Matthews, Kelley, Cannon & Carpenter, for appellee Lorence.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

WHITE, C. J.

This is an action for damages for bodily injuries resulting from electrical shock and burns. The injuries occurred while the plaintiff, Emil J. Lorence, was working on a billboard sign located near an electric power line constructed and maintained by the defendant, Omaha Public Power District. The jury verdict was for the plaintiff. The defendant has appealed from the overruling of the motion for directed verdict and judgment notwithstanding the verdict. We find that the plaintiff was contributorily negligent as a matter of law and reverse and dismiss.

Lorence was employed by Imperial Outdoor Advertising Company on April 29, 1969, the day of the accident. Lorence had been employed by that company or its predecessors since the late 1940's as a sign painter, painting foreman, and plant superintendent. He had served as plant superintendent for several months prior to the accident. This position involved supervision of all outdoor billboard signs. Lorence testified that he had been up on a lot of illuminated signs over the years.

On the day of the accident, Lorence was showing a newly hired electrician, Paul Brown, various signs. During the morning, Lorence and Brown had worked on several signs. They worked out of a pickup truck equipped with various electrical materials. A 40-foot extension ladder in two 20-foot sections was carried on the racks of the pickup. After lunch, Lorence and Brown

went to Forty-second and F Streets and parked the truck in a large parking lot underneath a sign to see if the lights were working.

The sign was erected in 1964. The face of the sign runs east and west and located at the bottom of the sign face are two footruns. Workmen stand on these footruns while working on the face of the sign. There is a footrun on the north and the south side of the sign face. Approximately 8 feet below the footruns is an x-shaped cross member which helps support the sign structure. There is a permanently affixed ladder which runs from the cross member up to the footruns. The bottom of this affixed ladder and the cross member are 20 feet above the ground. The sign is illuminated by lights which run parallel to the face of the sign and approximately 6 feet away. The light fixtures are supported by braces running horizontally from the top of the sign out to the fixtures. These fixtures are approximately 12 feet above the footruns.

The primary line is located to the north of the sign and runs east and west. Below the primary line there are several secondary overhead lines running east and west. The primary line is lower than the top of the sign. The distance from the light fixture on the north side of the sign to the primary line is 8 feet while the distance from the footrun to the primary line is about 9 feet.

Lorence and Brown turned on the sign lights. Upon looking up at the sign, they observed that the lights on the south side of the sign were working, but the lights on the north were out. They took one 20-foot section of the ladder off the truck and Lorence laid it up against the sign structure so he could climb up to the permanently affixed ladder and the cross member. He climbed up until he was standing on the x-shaped cross member. While standing on this cross member below the footrun, Lorence reached down and pulled

the 20-foot extension ladder up vertically through the space between the footrun and the northern face of the sign. He had one arm looped through the permanently affixed ladder leading to the footrun. Brown testified that while Lorence was holding on with one arm, he reached down and pulled the ladder up with his other arm and pushed the ladder vertically through the opening between the sign and the footrun. Just prior to the contact with the primary line, the topmost part of the ladder was extended approximately 15 feet vertically into the air  Lorence held on with one arm looped through the permanently affixed ladder and the other arm holding the 20-foot extension ladder. It was a windy day. Brown saw the bottom of the ladder tilt towards the south. As the top of the ladder hit the primary power line carrying 8,000 volts of electricity, Brown saw a flash of light like a bolt of lightning go down the ladder and strike Lorence. The burn mark on the ladder where it made contact with the primary line was 10 inches from the top end of the ladder. Lorence was holding the ladder 14 feet 8 inches from the point of contact with the primary line. The vertical height from the ground to the burn marks on the primary line was 31 feet 9 inches.

Brown admitted that in looking up to see if the lights were on he saw the overhead lines. There was also testimony by Brown that Lorence had warned him that morning to be careful of overhead lines. The plaintiff's own expert testified that he would not bring a 20-foot extension ladder anywhere near an 8,000 volt line.

The plant supervisor over Lorence at the time that the sign was constructed testified that employees under his supervision were given lectures on safety practices and procedures and it was emphasized very strongly to absolutely stay away from power lines. Lorence did not help with the construction of this sign nor had he

ever been on this particular sign. Lorence testified that the last thing he remembers prior to the accident was eating lunch.

The plaintiff alleged that the defendant was negligent in (1) maintaining an uninsulated and unguarded conductor unreasonably close to an outdoor advertising sign; (2) failing to make reasonable inspection of the distribution line; and (3) failing to relocate the distribution line to provide reasonable clearance from the sign.

Power companies engaged in the transmission of electricity, especially electricity of high voltage, are charged with the duty of exercising a very high degree of care to safeguard those whose lawful activities expose them to the risk of inadvertent contact with the electric lines but they are not insurers and not liable for damages in the absence of negligence. Gillotte v. Omaha Public Power Dist., 185 Neb. 296, 176 N. W. 2d 24 (1970).

As this court stated in Roos v. Consumers Public Power Dist., 171 Neb. 563, 106 N. W. 2d 871 (1961): "Such companies, being engaged in the transmission of a dangerous commodity, must anticipate and guard against events which may reasonably be expected to occur, and a failure to do so is negligence." There is a close question whether there was sufficient evidence on the issue of the defendant's negligence to go to the jury, however, we need not decide that issue, because we hold that the plaintiff was contributorily negligent more than slight as a matter of law, therefore barring any recovery.

One who is capable of understanding and discretion and who fails to exercise ordinary care and prudence to avoid defects and dangers which are open and obvious is negligent or contributorily negligent. Disney v. Butler County Rural P. P. Dist., 183 Neb. 420, 160 N. W. 2d 757 (1968): Omaha Nat. Bank v. Omaha P. P. Dist., 186 Neb. 6, 180 N. W. 2d 229 (1970).

To constitute want of due care it is not required that a person should have anticipated the exact risk which occurred, or that the peril was a deadly one; it is sufficient that he places himself in a position of a known danger where there was no need for him to be or that he knew or should have known that substantial injury was likely to result from his act. Disney v. Butler County Rural P. P. Dist., *supra.*

The lack of ordinary care by the plaintiff is self-evident. The primary line was open and obvious. The plaintiff was capable of understanding and discretion. He knew or should have known that the power lines were located in close proximity to the sign. He had been on numerous signs over the years and admitted he knew that electricity was dangerous.

The only inference which can reasonably be drawn from the evidence is that the plaintiff failed to exercise ordinary care for his own safety. Plaintiff was working 20 feet above the ground. While balancing himself on a cross member and holding onto the permanently affixed ladder, he additionally attempted to lift a 20-foot extension ladder weighing 50 pounds vertically up into the air 15 feet or more in close proximity to power lines on a windy day. Part of the time he attempted to raise and hold onto the extension ladder with one arm. The plaintiff clearly placed himself in a position of danger within close proximity to open and obvious power lines when he knew or should have known that substantial injury was likely to result from his activities in the manner by which he performed them. The only inference which can be reasonably drawn from the evidence is that the plaintiff was contributorily negligent as a matter of law.

The judgment of the District Court is reversed and the cause dismissed.

REVERSED AND DISMISSED.