RITA ERICKSON, PERSONAL REPRESENTATIVE OF THE
ESTATE OF LOYAL D. ERICKSON, DECEASED, ET AL.,
APPELLANTS AND APPELLEES, V. MONARCH INDUSTRIES,
INC., A NEBRASKA CORPORATION, ET AL., APPELLANTS
AND APPELLEES, SORGEL ELECTRIC CORPORATION, A
WISCONSIN CORPORATION, ET AL., APPELLEES.

347 N.W.2d 99

Filed March 30, 1984.   No. 83-308.

William A. Wieland of Healey, Brown, Wieland, Kluender, Atwood & Jacobs, and John Heitz, for appellant and appellee Erickson.

Jewell, Otte, Gatz & Collins, for appellant Walters-Heiliger.

John H. Cotton and David D. Ernst of Gaines, Otis, Haggart, Mullen & Carta, for appellant and appellee Monarch Industries.

Waldine H. Olson of Schmid, Ford, Mooney & Frederick, for appellees Sorgel Electric and Square D.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

BOSLAUGH, J.

This is an action by the personal representative of Loyal D. Erickson to recover damages for his wrongful death. Erickson died as the result of injuries sustained in an accident at a grain drying facility near Bassett, in Rock County, Nebraska. There were no witnesses to the accident.

Erickson was found dead at the facility at about 6:30 a.m. on October 5, 1977. The facility was owned by LaVern Krieger, who had contracted with Sandhills Grain, Inc., to operate the facility during the corn harvest in 1977. Erickson was employed by Sandhills Grain, Inc., as the night operator at the time he was killed. Sandhills Grain, Inc., was joined as a plaintiff for workmen's compensation subrogation purposes.

The defendants are Monarch Industries, Inc. (Monarch); Walters-Heiliger Electric, Inc.

(Walters-Heiliger); Sorgel Electric Corporation (Sorgel); and Square D Company (Square D).

The facility consisted of four large bins or tanks for storing dry grain, a tank for holding wet grain, two large dryers, and other equipment for weighing, handling, and moving the grain.

The electric service to the facility was 3-phase 480-volt service. The large horsepower motors of the facility were served directly by the 480-volt current. Two fractional horsepower motors and the control systems on the dryers, together with the lighting, required 120-volt current. The 120-volt current was supplied from a 2kVA transformer installed in the electrical control cabinet.

The plaintiffs' theory of the case was that the 2kVA transformer installed in the electric cabinet failed, causing an explosion. The explosion blew open the doors of the cabinet, which struck Erickson on the forehead, causing his death.

Monarch was the general contractor which constructed the facility. Walters-Heiliger was a subcontractor which performed some of the electrical work and furnished and installed the 2kVA transformer at the facility. The transformer, which had been manufactured by Westinghouse, was supplied to Walters-Heiliger by Sorgel, a subsidiary or division of Square D.

The plaintiffs alleged that Walters-Heiliger was negligent in that it failed to install a transformer of proper capacity; that the transformer was improperly connected; that it failed to give adequate warning of the risks involved with overloading the transformer; that Monarch was responsible for the negligent acts of Walters-Heiliger; and that Sorgel and Square D were negligent in failing to test the transformer, in supplying a defective transformer, and in failing to give adequate warnings. The plaintiffs also sought recovery against Sorgel and Square D on theories of strict liability.

The jury returned a verdict in the amount of

$300,000 in favor of the plaintiffs against Monarch and Walters-Heiliger, and in favor of Sorgel and Square D. Monarch and Walters-Heiliger appeal from the judgment against them. The plaintiffs appeal from the judgment in favor of Sorgel and Square D.

The evidence shows that the leads from the secondary coils of the 2kVA transformer installed by Walters-Heiliger could be connected in several different ways. If wired or connected as a 2kVA transformer, the current supplied by the secondary windings would be 16.66 amperes. When wired as two 1kVA transformers, the current supplied by each winding was only 8.33 amperes. The plaintiffs' evidence was that the transformer was wired so that it was in effect two 1kVA transformers. The result was that there was approximately a 50-percent overload on the transformer when the facility was operating. As installed, the circuits connected to the secondary coils were protected by a 15-ampere fuse.

The evidence further shows that the coils of the 2kVA transformer were surrounded by a fill material consisting of a resin and sand. The resin was an organic material which would give off flammable gases when heated. The jury could find that the transformer became overheated as a result of the overload, and flammable gases were released into the cabinet. When the main disconnect switch was thrown, the arc from the switch ignited the gases in the cabinet and caused the explosion.

Walters-Heiliger and Monarch contend that the trial court should have found as a matter of law that the production of combustible gases by the transformer was not foreseeable. These appellants argue that since the production of the gases was not reasonably foreseeable, there could be no finding of negligence.

The issue presented by the evidence and the pleadings was not whether Monarch and Walters-Heiliger were negligent in failing to foresee the specific risk that flammable gases would be produced, but, rather, whether they should have known that the

method used in installing and wiring the transformer presented an unreasonable risk of harm.

In *Lorence v. Omaha P.P. Dist.*, 191 Neb. 68, 214 N.W.2d 238 (1974), we held that it is not necessary for an actor to foresee the exact risk which occurred in order to support a finding of negligence; rather, it is sufficient that he knew or should have known that substantial injury would result from his act or omission. "It suffices to charge a person with liability for a negligent act if some injury to another ought reasonably to have been foreseen as the probable result thereof by the ordinarily intelligent and prudent person under the same circumstances, even though the specific injury might not be foreseeable." *Gillotte v. Omaha Public Power Dist.*, 185 Neb. 296, 302, 176 N.W.2d 24, 28 (1970). We conclude that the issues as to whether Walters-Heiliger and Monarch were negligent in failing to install a transformer of the proper size, in failing to properly connect the transformer, and in failing to adequately warn of the risks involved were properly submitted to the jury.

Monarch contends that it cannot be held liable for the negligence of Walters-Heiliger. Monarch relies on the general rule that the employer of an independent contractor is not liable for physical harm caused to another by the acts or omissions of the contractor or his servants. *Sullivan v. Geo. A. Hormel and Co.*, 208 Neb. 262, 303 N.W.2d 476 (1981). There are exceptions to this rule of nonliability. The general contractor remains liable for the negligence of the subcontractor "if he retains 'control' of the work—or if, by rule of law or statute, the duty to guard against the risk is made 'nondelegable'." *Funk v General Motors Corp*, 392 Mich. 91, 101, 220 N.W.2d 641, 645 (1974).

In the present case Monarch had a nondelegable duty to provide a facility which was safely wired. "The nondelegable duty exception is based upon the theory that certain responsibilities of a principal are so important that the principal should not be per-

mitted to bargain away the risks of performance." *Arsand v. City of Franklin*, 83 Wis. 2d 40, 54, 264 N.W.2d 579, 586 (1978), at n.8.

The nondelegable duty exception to the rule of nonliability was described by the court in *Witucke v Presque Isle Bank*, 68 Mich. App. 599, 610, 243 N.W.2d 907, 912 (1976): "[W]e believe that an essential element of the doctrine is the failure of the principal to see that all appropriate precautions are taken by the one to perform the inherently dangerous task. The doctrine, in short, says that the principal is negligent, and hence liable, because it has allowed the independent contractor to be negligent in performing the job. There is a nondelegable duty to see that the work is done with the requisite degree of care; when the contractor fails in fulfilling its duty of care, the principal has breached its own precautionary duty.

In *Rose v. Buffalo Air Service*, 170 Neb. 806, 104 N.W.2d 431 (1960), we held that an air service employed to spray a crop of beets with Toxaphene could not delegate its obligation to use due care or depend upon anyone else to take precautionary measures in that regard. We quoted at 834, 104 N.W.2d at 447, the following from *Hickman v. Parks Construction Co.*, 162 Neb. 461, 76 N.W.2d 403 (1956): " 'The person on whom the duty devolves is not excused from taking the necessary precautions by contracting with or relying on others to take necessary precautionary measures.' " In *Hickman, supra*, the defendant had entered into a contract with an officers' club to improve its facility. Plaintiff was injured when he fell into an open excavation. Defendant argued that it was not liable, as it had left the matter of protecting the site to the officer in charge of the club. We held the duty to protect against the danger to be nondelegable.

In *Hammond v. The Nebraska Nat. Gas Co.*, 204 Neb. 80, 281 N.W.2d 520 (1979), we held that the duty owed to the public to install pipes and fittings of

good material and workmanship and to maintain them in good condition could not be delegated. We held that any negligence on the part of the pipe manufacturer did not serve to relieve the gas company of liability for an explosion which occurred when the pipe pulled out of a coupling, thereby allowing gas to escape. See, also, *Crosswhite v. City of Lincoln*, 185 Neb. 331, 175 N.W.2d 908 (1970), in which we held that a city cannot delegate its duty to construct and maintain a reasonably safe waterworks system, as the city acts in a proprietary capacity.

In the present case Monarch entered into an agreement to construct the grain drying facility. Monarch employed Walters-Heiliger to perform the necessary electrical wiring. Walters-Heiliger was required to exercise utmost care and skill in providing the proper components and in wiring the facility, as it was providing a dangerous commodity. See, *Roos v. Consumers Public Power Dist.*, 171 Neb. 563, 106 N.W.2d 871 (1961); *Lorence v. Omaha P.P. Dist.*, 191 Neb. 68, 214 N.W.2d 238 (1974). Monarch could not delegate its duty to provide a facility that was wired safely.

Monarch and Walters-Heiliger contend that after the facility was completed and accepted by Krieger, the contractor and subcontractor cannot be held liable for defects which injure third persons. The general rule was stated in *Stover v. Ed Miller & Sons, Inc.*, 194 Neb. 422, 425, 231 N.W.2d 700, 703 (1975): " 'A construction contractor is not liable for injuries or damage to a third person with whom he is not in contractual relation resulting from the negligent performance of his duty under his contract with the contractee where the injury or damage is sustained after the work is completed and accepted by the owner.' "

The exception to this rule was described in *Florida Freight Terminals, Inc. v. Cabanas*, 354 So. 2d 1222, 1225 (Fla. App. 1978): "An independent contractor

is not liable for injuries to third parties after the contractor has completed his work and turned the project over to the owner or employer and it has been accepted by him *unless* the parties were dealing with inherently dangerous elements or the defect at issue was latent and could not have been discovered by the owner or employer."

In *Simmons v. Owens*, 363 So. 2d 142, 143 (Fla. App. 1978), the court said: "The general rule . . . is subject to the exception that a contractor is not relieved of liability where he creates a dangerous condition or unreasonable risk which is latent and not discoverable by reasonable inspection." See, also, *Slavin v. Kay*, 108 So. 2d 462 (Fla. 1959).

In the present case the defect in the wiring of the transformer was latent and not reasonably discoverable by the owner, Krieger. Moreover, the installation of the electrical transformer was an inherently dangerous task such that the law will not relieve the contractors' liability for their negligence merely because Krieger accepted the facility.

It was clearly foreseeable that danger and harm could result if the transformer was undersized, improperly wired, and improperly fused. Walters-Heiliger, as skilled electricians, was chargeable with knowledge that an overloaded transformer will become overheated and may cause a fire or other dangerous condition. It was not essential that the precise happening in this case be foreseeable.

Monarch and Walters-Heiliger further contend that the trial court should have instructed the jury that certain instructions which applied only to Sorgel and Square D were inapplicable to Monarch and Walters-Heiliger. In the absence of a specific instruction limiting applicability, these appellants object to the giving of the instructions pertaining to strict liability.

Instructions must be considered and construed together, and if they adequately present the issue to the jury, it is not error for the court to fail to give a

more specific instruction. *Lane v. State Farm Mut. Automobile Ins. Co.*, 209 Neb. 396, 308 N.W.2d 503 (1981). If a more specific instruction is desired, it is the duty of counsel to request it. *Smith v. Wrehe*, 199 Neb. 753, 261 N.W.2d 620 (1978); *Fisher v. Gate City Steel Corp.*, 190 Neb. 699, 211 N.W.2d 914 (1973).

In instruction No. 2 the jury was advised that the plaintiffs alleged that Sorgel and Square D were liable for decedent's death under a strict liability theory. All of the other instructions objected to clearly applied only to Sorgel and Square D. Instructions Nos. 8, 33, and 34 stated that they were applicable only to Sorgel and Square D. Instructions Nos. 26, 27, 28, 29, 30, 31, and 32, by their specific terms, applied only to the *manufacturer.* Instruction No. 21 was a negligence instruction which was applicable to all defendants and could not be a basis for this assignment of error. Instruction No. 25 defined "unreasonably dangerous," a term used only in the strict liability cause of action against Sorgel and Square D.

We conclude that the instructions, when read as a whole, fairly presented the issues to, the jury and were not erroneous. In the absence of a request for a more specific instruction, Monarch and Walters-Heiliger cannot predicate error on the court's failure to give a more specific instruction.

The plaintiffs contend the trial court erred in refusing to give the plaintiff's requested instruction No. 24 and in giving instructions Nos. 23, 24, 29, 30, 33, and 34 over the plaintiff's objections. The instructions involved related to the plaintiffs' claims against Sorgel and Square D based upon theories of negligence and strict liability. From our examination of the record we have concluded that the assignments of error are without merit.

Instruction No. 24 requested by the plaintiffs related to foreseeability, and stated that it is sufficient if some injury is reasonably foreseeable even though

the specific injury might not be foreseeable. Instruction No. 24 given by the trial court related to foreseeability, and advised the jury that an actor is responsible for a consequence which is probable according to ordinary and usual experience. Under the circumstances of this case we believe the failure to give the requested instruction in the exact form in which it was submitted was not prejudicially erroneous.

As to the other instructions given by the trial court and objected to, instruction No. 23 on intervening cause was taken from NJI 3.43. Instruction No. 34 related to use of the product and was taken from 3 E. Devitt & C. Blackmar, Federal Jury Practice and Instructions § 82.10 (3d ed. 1977). It advised the jury that the defendants Sorgel and Square D were liable for a misuse of the transformer only if it was being used in a manner for which it was adapted and which was *reasonably* foreseeable by the defendants.

In *Edwards v. Sears, Roebuck and Company*, 512 F.2d 276, 289 (5th Cir. 1975), the court stated: "In Mississippi and most jurisdictions, however, the doctrine of strict liability stops short of declaring liability in all cases where both injury and defect are proved, for '[a] product is not in a defective condition when it is safe for *normal* handling and consumption.' Restatement of Torts Second, Section 402A, Comment *h* (emphasis added). Notions of foreseeability and proximate cause have been injected, in a limited way, into strict liability in order to avoid imposing excessive liability on manufacturers. Professor Prosser has noted that 'the seller is entitled to expect a normal use of his product, and is not liable when it is put to an abnormal use.' Thus, the seller is not liable when the product is mishandled, or used in some unusual and unforeseeable way. 'The seller is entitled to have his due warnings and instructions followed; and when they are disregarded, and injury results, he is not liable.' Pros-

ser, *supra*, § 102, at 668-669." In *Hawkins Constr. Co. v. Matthews Co., Inc.*, 190 Neb. 546, 209 N.W.2d 643 (1973), and *Hancock v. Paccar, Inc.*, 204 Neb. 468, 283 N.W.2d 25 (1979), we noted that misuse of the product is a defense to strict liability.

Instruction No. 29 advised the jury that compliance with standardized tests was *evidence* of due care. Instruction No. 30 advised the jury that a manufacturer has a right to assume that its instructions will be followed. Instruction No. 33 related to the "state of the art" defense, and advised the jury that it might consider evidence as to the practices followed by other manufacturers but that such evidence was not controlling, and the question was whether the evidence disclosed that anything more could reasonably and economically be done. We find no error in any of these instructions.

We further conclude that the evidence was not sufficient to support a finding of liability against Sorgel and Square D on either theory. Accordingly, any alleged error in the instructions was not prejudicial. *McClellen v. Dobberstein*, 189 Neb. 669, 204 N.W.2d 559 (1973).

The plaintiffs alleged that Sorgel and Square D were negligent in failing to test the insulation material in the transformer; in failing to require Westinghouse to test it; in failing to warn the user of the danger it presented; and in supplying a dangerous product.

The record shows that the transformers had been tested by a number of agencies, including Underwriters Laboratories, and that Westinghouse performs all of the tests required by Underwriters Laboratories and the National Electrical Manufacturers Association on all of the transformers it manufactures. In addition to all of the tests prescribed by these agencies, Westinghouse performs all of the tests prescribed by the Institute of Electronic and Electrical Engineers, the American National Standards Institute, and the tests which other manufac-

turers perform. A supplier has a right to rely upon the inspection and tests performed by the manufacturer. See, *Chandler v. Northwest Engineering Co.*, 111 Misc. 2d 433, 444 N.Y.S.2d 398 (1981); *Zesch v. The Abrasive Co. of Philadelphia*, 353 Mo. 558, 183 S.W.2d 140 (1944); *Henkel v. R and S Bottling Co.*, 323 N.W.2d 185 (Iowa 1982).

None of the tests conducted indicated that the fill material was dangerous at temperatures to which the transformer might conceivably be exposed before the transformer would fail. In the absence of evidence from which it could be concluded that Sorgel and Square D should not in the exercise of due care have relied upon the tests performed by the manufacturer, Sorgel and Square D could not be held liable for failing to test or requiring the manufacturer to further test the transformer.

There was no evidence from which it could be concluded that Sorgel and Square D were negligent in failing to warn a user of any danger presented by the product. The transformer was not a product intended for use by persons unskilled in the installation and wiring of electrical equipment. The manufacturer included directions for wiring with the transformer and referred the user to the National Electrical Code for proper fusing.

In *Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457, 465 (5th Cir. 1976), the court said: "Comment *k* to this provision [Restatement (Second) of Torts § 388 (1965)] adds that warning of a product's defects is unnecessary where the supplier of the product has 'reason to believe that those who will [sic] use it will have such special experience as will enable them to perceive the danger . . . .' "

The court went on to hold that the supplier of a chemical product used in stripping a barge was not liable for negligent failure to warn. "In view of the limited marketing of Hytrol-D to industrial users, DuPont could reasonably anticipate that only professionals familiar with the precautions necessary for

safe handling of benzene and similar petrochemical substances would come in contact with or otherwise handle the cargo of the B-29. The Wilsco stripping crew was in fact composed of such professionals, and the crew had been made aware of the nature of the liquid residue to be stripped from the barge. At least with regard to individuals having such expertise, the warnings provided by DuPont in the form of the benzene warning card and the product identification card should have been adequate to apprise crew members of the hazards . . . ." *Id.* at 465. A seller has a right to expect that his instructions are followed. " 'The seller is entitled to have his due warnings and instructions followed; and when they are disregarded, and injury results, he is not liable.' Prosser, *supra*, § 102, at 668-669." *Edwards v. Sears, Roebuck and Company*, 512 F.2d 276, 289 (5th Cir. 1975).

In light of the fact that the manufacturer's instructions for proper wiring were included with the transformer, and the supplier knew that those to whom it would be sold would have special knowledge as to how to install the transformer, we conclude that the supplier had no additional duty to warn. It was only because of improper wiring and installation that the transformer could cause any hazard.

Under these circumstances Sorgel and Square D had a right to assume that Walters-Heiliger would follow the instructions. It is not reasonably foreseeable that a consumer of particular expertise would fail to follow directions. See *Hughes v. Magic Chef, Inc.*, 288 N.W.2d 542 (Iowa 1980).

A manufacturer or supplier is not required to warn about every conceivable danger that might arise from the misuse of the product. *Westerberg v. School District No. 792*, 276 Minn. 1, 148 N.W.2d 312 (1967). Failure to follow plain and unambiguous instructions is a misuse of the product. *Procter & Gamble Manufacturing Co. v. Langley, on rehearing* 422 S.W.2d 773 (Tex. Civ. App. 1967).

Sorgel and Square D merely supplied a 2kVA transformer to Walters-Heiliger, with no information as to how it would be installed and wired by the purchaser. If the transformer had been installed, wired, and fused in accordance with the directions and instructions supplied by Sorgel and Square D, there would not have been an accident. Neither the manufacturer nor the supplier was under a duty to anticipate such improper use and warn against possible dangers. *Westerberg, supra.*

There was no evidence in this case that the transformer was defective at the time it was supplied to Walters-Heiliger by Sorgel and Square D. A seller is not liable when he delivers a product in a safe condition and subsequent mishandling or other causes make it harmful by the time it is consumed.

The transformer was considered to be one of the safest manufactured because the coils of the transformer were embedded in the fill material. From 1971 through 1977 Sorgel and Square D sold more than 148,000 transformers containing the fill material. From 1970 to 1976 Westinghouse sold approximately 508,000 such transformers. Examination of failed transformers disclosed virtually no burned or scorched fill material. No witness, including the expert witnesses called by the plaintiffs, had ever heard of this type transformer emitting flammable gases so as to cause an explosion.

Sorgel and Square D in this case occupied the same relationship to Monarch and Walters-Heiliger as Winger Boss Company, Inc., did to Iowa Beef Processors, Inc., in *Moon v. Winger Boss Company, Inc.*, 205 Neb. 292, 287 N.W.2d 430 (1980). In that case Winger Boss was held not liable to an injured party where the machinery supplied by Winger Boss had been manufactured to specifications established by Iowa Beef.

The plaintiffs failed to prove that Sorgel and Square D should be held strictly liable. There was no proof that the transformer provided by Sorgel

and Square D was unreasonably dangerous if properly wired. "Unreasonably dangerous" is defined as meaning that " 'the product had a propensity for causing physical harm beyond that which would be contemplated by the ordinary user or consumer who purchases it, with the ordinary knowledge common to the foreseeable class of users as to its characteristics.' " *Hancock v. Paccar, Inc.*, 204 Neb. 468, 484, 283 N.W.2d 25, 37 (1979).

There is no evidence from which it could be concluded that the product was negligently designed. The transformer was designed so that it would fail when severely overloaded.

The wire in the windings of the transformer was insulated with enamel. The layers of coil wire were separated by Kraft paper. The enamel was expected to fail at 200° C, and the Kraft paper at 233° C, resulting in short circuits in the transformer. In one of the tests performed by Underwriters Laboratories in which the transformer was subjected to a 200-percent overload, the transformer burned out and failed in 27 minutes.

In the laboratory experiments conducted by the plaintiffs' expert witness, temperatures in excess of 300° C were required to produce flammable gas in appreciable quantities from the fill material.

A manufacturer has a duty to use reasonable care in the design of goods to protect the consumer from unreasonable risk of harm while the goods are being used for their intended purpose or any purpose which could reasonably be expected. *Friedrich v. Anderson*, 191 Neb. 724, 217 N.W.2d 831 (1974). As noted earlier, the failure of Walters-Heiliger to follow the wiring instructions was not a use which could reasonably be expected. The manufacturer was not obligated to design a product safe for an unforeseeable misuse.

The transformer was designed to be used with proper fusing, a safety apparatus which would prevent overheating due to overloading. In the absence

of any evidence that the safety device was not a reasonable preventative of injury under proper use, it cannot be concluded that the transformer was negligently designed. See, *Westerberg v. School District No. 792*, 276 Minn. 1, 148 N.W.2d 312 (1967); *Rogers v. Unimac Co., Inc.*, 115 Ariz. 304, 565 P.2d 181 (1977).

In a case, such as the present one, where a plaintiff seeks to impose strict liability upon a defendant for defective product design, the plaintiff must prove there was some practicable way the product could have been made safer. *Nerud v. Haybuster Mfg.*, 215 Neb. 604, 340 N.W.2d 369 (1983). See, also, *Thibault v. Sears, Roebuck & Co.*, 118 N.H. 802, 395 A.2d 843 (1978), in which the court held that the plaintiff must demonstrate that a useful and desirable product could have been made safer without significant impact on product effectiveness and manufacturing cost. In that case the court stated, "[S]trict liability is not a no-fault system of compensation." *Id.* at 806, 395 A.2d at 845-46.

In the present case there was no proof that a safer, practicable, and economically feasible method of insulating a transformer was available.

The judgment of the district court in favor of the plaintiffs and against the defendants Monarch and Walters-Heiliger is affirmed; and the judgment against the plaintiffs and in favor of the defendants Sorgel and Square D is affirmed.

AFFIRMED.