951 F.2d 907
 Dennis MURDOCK and Sharon Murdock, for themselves and as
parents and next friends of their minor child,
Shawn M. Murdock, Appellants,
Employers Insurance of Wausau, a Corporation,
v.
UNITED STATES of America, Appellee,
Western Contracting Corporation, Appellee.
 No. 89-2303.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 1, 1991.
Decided Dec. 18, 1991.
Rehearing Denied Feb. 3, 1992.
 
 Denzel Busick, Grand Island, Neb., argued, for Dennis Murdock, et al.
 Steve Russell, Asst. U.S. Atty., Lincoln, Neb., argued, for U.S.
 Robert Grimit, Lincoln, Neb., argued, for Western Contracting.
 Before LAY, Chief Judge, HEANEY, Senior Circuit Judge, and McMILLIAN, ARNOLD, JOHN R. GIBSON, FAGG, BOWMAN, WOLLMAN, MAGILL, BEAM and LOKEN, Circuit Judges, En Banc.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Western Contracting Corporation contracted with the United States, through the Bureau of Reclamation, to build the Mirdan Canal near Burwell, Nebraska, and employed Dennis Murdock as part of its night-shift crew. On June 12, 1985, Murdock was using a hand-held mechanical dirt compactor, or "Whacker-Packer", to build soil around a concrete canal lining in a bridge abutment excavation. A portion of the canal lining wall collapsed, Murdock was buried, and he suffered serious injuries. Murdock and his family sued the United States, which owns the land where Murdock was working, under the Federal Tort Claims Act, 28 U.S.C. § 2671 (1988), claiming that the United States negligently failed to take adequate precautions to ensure a safe place to work.[1] The district court[2] entered judgment for the United States, holding that the Bureau did not owe a duty to provide Murdock a safe place to work under Nebraska law, and that even if such a duty existed, the Bureau was not negligent and Murdock was contributorily negligent. Murdock v. United States, CV86-L-492, slip op. at 6-8 (D.Neb. Mar. 15, 1989). A panel of this court reversed. Murdock v. United States, 917 F.2d 1065 (8th Cir.1990), and we granted rehearing en banc. We conclude that the district court correctly denied relief under Nebraska law, and that its decision denying relief after trial was based on facts which are not clearly erroneous. We affirm the district court's judgment.
 
 
 2
 The facts of this case are set forth in the panel opinion, 917 F.2d at 1066-69, and will be repeated here only as necessary to address the arguments on appeal.
 
 
 3
 The general rule in Nebraska is that an owner is not liable for the negligence of an independent contractor. Sullivan v. George A. Hormel & Co., 208 Neb. 262, 303 N.W.2d 476, 478 (1981). This rule is subject to three exceptions. The owner is liable for the negligence of the independent contractor if: (1) the employer retains control of the work; (2) Nebraska common law creates a nondelegable duty; or (3) Nebraska statutes create a nondelegable duty. Erickson v. Monarch Indus., 216 Neb. 875, 347 N.W.2d 99, 105 (1984).
 
 
 4
 After extensive discovery, Murdock and the United States filed motions for summary judgment. The district court first considered whether the Bureau had a nondelegable duty under Nebraska case law to provide Murdock with a safe place to work. The court rejected Murdock's claim that the Bureau owed a duty to provide Murdock with a safe place to work because it owned the land where the accident occurred. Murdock v. United States, No. CV86-L-492, slip op. at 8 (D.Neb. Nov. 30, 1988). The court concluded that the Bureau may still have a duty under Nebraska case law, however, because an owner who is responsible for a dangerous place or operation likely to cause injury has a nondelegable duty to take due and suitable precautions. Id. at 9. The district court considered whether the government had such a duty under Nebraska law, and concluded that the duty to provide a safe place to work "rests with the party upon whom the duty devolved." Id. at 10. The court reasoned that the question is answered by determining who had control over the work, and therefore, the first two exceptions to Nebraska's non-liability rule were "inextricably combined." Id. at 9.
 
 
 5
 In determining whether Western retained control over the project, the court observed that the contract between Western and the Bureau included safety standards, that the Bureau retained the right to perform inspections for violations of safety standards, and did conduct inspections. Id. at 13. The court also observed that the decision to remove a portion of the curb above the excavations was based on the advice of Robert McClure, the Bureau's Project Construction Engineer, and that a government inspector, Richard Schwisow, was at the site on the day of the accident, saw that there was a problem with the excavation, but told no one about it. Id. The court also noted that the Bureau did not perform the excavation work, and that Western had the primary responsibility for worker safety. Id. Although terming the decision "difficult," the court concluded that the Bureau retained sufficient control over the project to justify the imposition of a duty to provide Murdock with a safe place to work. Id. at 14.
 
 
 6
 Following an eight-day trial, the district court entered judgment for the government. The court first held that, after considering all of the evidence, the Bureau did not retain sufficient control to justify imposing a duty under Nebraska law. Murdock, slip op. at 6 (Mar. 15, 1989). The district court found that the trial testimony established that the level of control exercised by the government's agents was "markedly lower" than that in McMichael v. United States, 751 F.2d 303, 309 (8th Cir.1985), appeal after remand, 856 F.2d 1026 (8th Cir.1988), and therefore, neither of the remaining exceptions to Nebraska's general rule of non-liability applied. Slip op. at 6 (Mar. 15, 1989).
 
 
 7
 The court acknowledged that this result differed from its initial holding which was not based on all of the evidence. Slip op. at 2, 6 (Mar. 15, 1989). The court observed that the government's right to inspect was for the government's sole benefit to ensure that Western complied with the contract specifications and terms, and that the inspectors lacked authority to direct the activities of Western employees unless the inspectors issued a stop work order because of a safety violation. Id. at 3-4. The court considered whether the inspectors should have issued a stop work order and observed that the construction inspector, Mark Sintek, and his supervisor, Richard Schwisow, established that the inspectors did not normally issue stop work orders, but instead, informally discussed and resolved their concerns with Western's supervisors. Id. The court noted that Western's safety officer and foreman testified that he did not rely on the Bureau inspectors for their safety advice. Id. The court also found that the role of the Bureau's project construction engineer, Robert McClure, was less crucial than that of James Pinkman, Western's project superintendent, with respect to the decision to cut the concrete liner of the canal, and that the subordinates of both believed that the reason for cutting the liner was to give workers sufficient room to work, and not for safety reasons. Id. at 5. The court further found that Schwisow's inaction reflected little about the amount of government control over the project because his concern about the excavation was that the crew's efforts were being wasted, and not that the hole posed an unreasonable risk to the crew's safety or the safety of others. Id.
 
 
 8
 Despite its holding that the Bureau lacked sufficient control to impose a nondelegable duty under Nebraska law, the court went on to consider whether the Bureau acted negligently. The court held that even if the excavation qualified as extra-dangerous, insufficient evidence existed to show that the United States failed to take due and suitable precautions to protect Murdock from injury. Id. at 7. The court found that Schwisow did not know that the night crew would be working on the particular excavation the night of the accident, that Sintek did not recall ever seeing workers using whackers in excavations in which abutments had not already been placed, that the Bureau's inspectors had no way of knowing that workers would be working in the excavation because Western had not informed them of such plans, and that safety inspectors were not assigned to the night crew as a matter of course. Id. at 7-8.
 
 
 9
 The district court also held that the weight of the evidence did not support Murdock's claim that the government failed to exercise due care in designing the canal. Id. at 8. Finally, the district court observed that Murdock was negligent, but did not decide whether Murdock's negligence would bar him from recovery under Nebraska law. Id.
 
 
 10
 The district court, in the order denying summary judgment, also concluded that no Nebraska statute imposed a nondelegable duty on the Bureau. Slip op. at 16-18 (Nov. 30, 1988). The court rejected Murdock's arguments that Neb.Rev.Stat. § 48-425 (Reissue 1988)[3] relating to supports used in the erection of certain structures, or Neb.Rev.Stat. § 48-433 (Reissue 1988)[4], a statute requiring architects or draftsmen to provide permanent structural features in specifications and drawings, applied. Slip op. at 16-18 (Nov. 30, 1988). The court also held that any duty imposed upon OSHA inspectors did not create liability for the Bureau. Id. at 18.
 
 
 11
 A panel of this court held that the district court's holding that the Bureau did not retain sufficient control to justify imposing a duty to provide a safe workplace was not clearly erroneous. 917 F.2d at 1069. The panel reversed the district court's ruling on the Bureau's nondelegable duty under Nebraska case law. The panel held that the Bureau: (1) could not delegate its duty to protect workers engaged in the inherently dangerous activity of excavation work; and (2) failed to take suitable precautions to protect Murdock from injury. 917 F.2d at 1069-73. The panel also held that the Bureau's failure to ensure that safety procedures were followed was not protected by the discretionary function exception to the Federal Tort Claims Act. Id. at 1073. We granted rehearing en banc.
 
 I.
 
 12
 Murdock first argues that the district court erred in holding that the United States did not have a nondelegable statutory duty. He argues that Neb.Rev.Stat. § 48-425 creates a nondelegable duty. That statute requires all supports used in the erection of any bridge or other structure be erected or constructed in a safe, suitable, and proper manner. Murdock contends that section 48-425 applies because the canal lining qualifies as a "structure" and that dirt constituted the "support" for the canal.
 
 
 13
 The district court rejected Murdock's argument, holding that, although the canal lining may qualify as a structure, dirt is not the type of support that the drafters of section 48-425 contemplated. Slip op. at 16 (Nov. 30, 1988). The court looked to the six enumerated items set forth in the statute, "including supports or other mechanical contrivances," and observed that all of the listed instrumentalities, including the catchall provision ("other mechanical contrivances"), were mechanical. Id. The court stated that "[i]t would require an extremely liberal reading of "support" ... to conclude that dirt is an instrumentality that is capable of being "erected and constructed" in a way that was contemplated by the drafters. Id. at 17. We are convinced that the district court did not err in rejecting Murdock's argument. We are mindful of the dictates of Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991), to review state law questions de novo, giving the district court ruling no deference. Id., 111 S.Ct. at 1221. This we do, and we cite the district court's reasoning only because we find it compelling.
 
 II.
 
 14
 Murdock next argues that the Bureau violated its statutory duties during the design phase of the project. Murdock contends that the Bureau had a nondelegable statutory duty under Neb.Rev.Stat. § 48-433, which provides that: "draftsmen in preparing plans, specifications or drawings to be used in the erection ... of any ... structure ... shall provide [therein] for all the permanent structural features or requirements...." Murdock says that the Bureau's plan and specifications negligently failed to prohibit Western from building heavy, unreinforced concrete canal lining before excavating for the bridge abutment, and that such a sequence of construction resulted in concrete overhanging the excavations.
 
 
 15
 Along similar lines, Murdock argues that the Bureau had a nondelegable duty under Nebraska law to design the canal, and that the Bureau's negligence in designing the canal is shown by the Bureau's failure to comply with its own Safety Design Standards and Construction Safety Standards. Again, he says that the drawing and specifications negligently failed to prohibit Western from erecting the canal lining before excavating for the bridge abutment.
 
 
 16
 The district court rejected Murdock's arguments, concluding that the sequencing and performance of the construction work was not a type of detail required by section 48-433 and could not be termed a "permanent structural feature." Slip op. at 17 (Nov. 30, 1988). The court also held that the Bureau did not negligently design the canal by failing to include for the sequencing of work in the drawing or specifications. Slip op. at 8. (Mar. 15, 1989).
 
 
 17
 The district court did not err in rejecting Murdock's arguments. Once again, we are convinced by the district court's reasoning that it correctly interpreted Neb.Rev.Stat. § 48-433. We also observe that the district court's rulings are supported by the testimony of the Chief of the Bureau's civil engineering division, who testified that the drawing in question reflected a proper design. Slip op. at 8 (Mar. 15, 1989). He explained that because safety regulations are a part of the contract, there is no reason to include a sequencing of work in the construction drawings, and that the Bureau's goal is to provide the contractor with as much discretion in the actual construction as feasible. Id.
 
 III.
 
 18
 Murdock's next argument is that the district court erred in determining that under Nebraska common law the Bureau did not retain or exercise sufficient control over the work so as to require it to provide Western's employees with a safe place to work. Specifically, Murdock points to certain standards contained in the contract which provided that the Bureau had the right to inspect Western's work, issue safety directives to Western, and stop any work not in substantial compliance with the contract's drawings and specifications or in violation of the Bureau's Construction Safety Standards. The question of whether an owner retains sufficient control is a factual one. See McMichael, 751 F.2d at 309-10.
 
 
 19
 Murdock essentially argues that the Bureau had a mandatory duty to make safety inspections, and that as a matter of law, the Bureau was negligent for violating these mandatory duties. That the government had the right to inspect Western's work and to order that work be stopped does not translate into a finding that the Bureau retained sufficient control over Western's work. See, e.g., United States v. Page, 350 F.2d 28, 30-31 (10th Cir.1965) (right to inspect and implementation of safety program does not necessarily constitute an exercise of control), cert. denied, 382 U.S. 979, 86 S.Ct. 552, 15 L.Ed.2d 470 (1966). The contract also required Western to supervise all work under the contract, and to take "proper safety and health precautions to protect ... workers." It is undisputed that the Bureau did not perform any of the excavation work. Cf. McKinstry v. County of Cass, 228 Neb. 733, 424 N.W.2d 322, 329 (1988). The district court, after trial, detailed the evidence which led to its conclusion that the government control exercised in this case was markedly lower than that in McMichael, and this lack of control rendered both exceptions to Nebraska's general rule not applicable. Slip op. at 2-6 (Mar. 15, 1989). We have outlined those findings above, and are satisfied that they are not clearly erroneous.[5]
 
 
 20
 Even if we concluded that the government had a mandatory duty placed upon it, the district court's findings that the government agents exercised reasonable care in the performance of their duties regarding the excavation deprives Murdock's argument of persuasive force. The district court carefully considered the actions of the Bureau employees regarding the excavation, made detailed findings on this subject, and concluded that these employees exercised reasonable care in performing their duties relating to the excavation. Slip op. at 7-8. (Mar. 15, 1989).
 
 
 21
 We review these factual findings under the clearly erroneous standard. Two specific factual findings form the foundation for the district court's conclusion that the Bureau did not act negligently.[6] First, until the night of the accident, the members of the night crew had never worked with whackers in a bridge abutment excavation on this project, although they had used whackers to compact soil around abutments after the abutments had been placed--a later stage of the construction than was involved here. Slip op. at 8 (Mar. 15, 1989). Second, Schwisow did not know that the night crew would be working in the particular excavation the night of the accident. Id. These findings are fully supported by these individuals' testimony. Sintek testified that he had never observed a hand-held soil compactor in an excavation area before the placement of a bridge abutment. No Western representative ever told Sintek that a night-shift crew would be working in the excavation the night of the accident. Schwisow also testified that he had never seen hand-held soil compactors in an excavation area before the placement of a bridge abutment on an abutment footing, and that he was not informed the night-shift would be working in the excavation area the night of the accident. Cf. Thorne v. United States, 479 F.2d 804, 809-10 (9th Cir.1973) (government liability imposed when Bureau recognized lack of proper precautions taken in trenching operation); Rooney v. United States, 634 F.2d 1238, 1244 (9th Cir.1980) (government liability imposed when government knowingly permitted contractor to use inexperienced, careless crew); Simon, 202 N.W.2d at 164 (liability imposed when power district aware of unguarded holes).
 
 
 22
 The testimony of Sintek and Schwisow supports the district court's findings. Insofar as there may have been differing testimony, the district court had the responsibility of resolving the conflicts. Anderson v. City of Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). Anderson makes clear that "[t]he reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court." Id. at 573, 105 S.Ct. at 1511. "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id. at 573-74, 105 S.Ct. at 1511.
 
 IV.
 
 23
 In view of the conclusions we have reached, it is unnecessary to consider the questions of the application of the discretionary function exception, contributory negligence or assumption of risk.
 
 
 24
 We affirm the judgment of the district court.
 
 
 25
 HEANEY, Senior Circuit Judge, dissenting, with whom LAY, Chief Judge, and McMILLIAN, Circuit Judge, join.
 
 
 26
 This case should not be before this court for en banc consideration. Our rules are clear that en banc disposition is "rigidly" reserved for cases of "grave constitutional dimension or exceptional public importance, or to an opinion that directly conflicts with Supreme Court or Eighth Circuit precedent." 8th Cir.R. 35A(a). It is not apparent nor has it been demonstrated that this case meets any of these standards. Certainly the panel opinion does not conflict with any federal, or even state, precedent. Moreover, the only thing "grave" or "important" about this case was the tragedy suffered by Dennis Murdock and his family; that is, unless holding the government liable for this tragedy satisfies either of these criteria.
 
 
 27
 As the majority's opinion attests, this case turns on applying state law to largely uncontroverted facts. Such a case should rarely, if ever, justify the convening of a federal court of appeals en banc. Our rules recognize and establish this fact, explicitly explaining that asserted errors in the determination of the facts or state law are not matters for rehearing en banc. 8th Cir.R. 35A(a). Thus, regardless of the outcome, we should not have reheard this case en banc. Compounding the confusion created by the court's disregard of our own rules is the en banc majority's decision, which misapplies Nebraska law, and therefore compels this dissent.
 
 I. The Bureau's Nondelegable Duty
 
 28
 The majority proceeds under the legal theory that before it can conduct nondelegable duty analysis under Nebraska law, it must first find that the employer, here the Bureau, retained control of the work which injured the victim. See ante at 912-13. To support this approach, the majority cites Erickson v. Monarch Industries, Inc., 347 N.W.2d 99, 105 (Neb.1984). This understanding of Nebraska law is mistaken. Rather than requiring a finding of retention of control before examining the nondelegable duty issue, Nebraska law provides that the principal remains liable for the negligence of the contractor " 'if he retains "control" of the work--or if, by rule of law or statute, the duty to guard against the risk is made "nondelegable." ' " Id. at 105 (quoting Funk v. General Motors Corp., 220 N.W.2d 641, 645 (Mich.1974)) (emphasis added).[1]II. The Bureau's Negligence
 
 
 29
 Despite concluding that the government did not retain control sufficient to expose it to liability, the majority defies its own understanding of Nebraska law and offers its opinion that the district court did not clearly err in ruling that the Bureau did not act negligently. Implicit in this offering is the concession that a nondelegable duty existed "to see that the work is done with the requisite degree of care." Erickson v. Monarch Indus., Inc., 347 N.W.2d at 105 (quoting Witucke v. Presque Isle Bank, 243 N.W.2d 907, 912 (Mich.Ct.App.1976)). Because the Bureau was negligent in its supervision of the work site, I disagree with the majority's conclusion that the Bureau did not breach its nondelegable duty.
 
 
 30
 By approving the district court's ruling, the majority joins the trial court in ignoring and discounting the evidence that both the Bureau and Western admitted: that the unsupported, unreinforced canal lining was apt to collapse; that the Bureau was aware that the "chipping off" to which it agreed in order to ensure workers' safety was not being followed; that the Bureau knew that, due to its composition, the soil in the excavation area was prone to sloughing; that the Bureau was aware that the slope in the excavation exceeded that permitted by the Construction Safety Standards which governed the project's safety conditions; that the Bureau knew compacting was necessary; and that the night crew had compacted before. Nebraska law deems such a situation inherently dangerous. See Erickson v. Monarch Indus. Inc., 347 N.W.2d at 99 (electrical transformer is inherently dangerous); McKinstry v. Cass County, 424 N.W.2d 322, 329 (Neb.1988) (excavated trench is inherently dangerous); Crosswhite v. City of Lincoln, 175 N.W.2d 908, 911 (Neb.1970) (pipe protruding through a sidewalk creates a dangerous condition); Colvin v. John Powell & Co., 77 N.W.2d 900, 908-10 (Neb.1956) (poison-tainted molasses barrels are dangerous); Hickman v. Parks Construction Co., 76 N.W.2d 403, 407-10 (Neb.1956) (excavated trench is inherently dangerous). In an inherently dangerous situation, Nebraska law imposes a nondelegable duty on the owner of the land, in this case the Bureau, "to see that all appropriate precautions are taken by the one to perform the inherently dangerous task.... There is a nondelegable duty to see that work is done with the requisite degree of care; when the contractor fails in fulfilling its duty of care, the principal has breached its own precautionary duty." Erickson v. Monarch Indus., Inc., 347 N.W.2d at 105 (quoting Witucke v. Presque Isle Bank, 243 N.W.2d 907, 912 (Mich.Ct.App.1976)).
 
 
 31
 Although Nebraska law deems the accident site here an inherently dangerous situation, the majority has ignored, or at least discounted, the evidence which demands this legal conclusion. Doing so facilitates its conclusion of non-negligence. The majority's discounting of facts, however, goes beyond those that it does not mention and surfaces in its recitation of the facts on which it bases its decision. Indeed, without this additional discounting, the majority's position would be untenable.
 
 
 32
 The majority relies on the testimony of Mark Sintek and Richard Schwisow to justify its conclusion of non-negligence. As the majority states, these two claimed that they were unaware that a night crew would be working at the site of the accident on the night it occurred. What the majority does not mention, however, is that other aspects of Sintek's and Schwisow's testimony are implausible and tend to discredit their entire testimony. See Murdock v. Employers Ins. of Wausau, 917 F.2d 1065, 1071 (8th Cir.1990) vacated, reh'g granted January 3, 1991 (Sintek's and Schwisow's testimony regarding angle of repose and exposure of canal lining contradict). Moreover, the very testimony on which the majority rests its conclusion of non-negligence is itself highly questionable.
 
 
 33
 At least three facts cast doubt on the testimony of these two individuals that they were not aware that the night crew would be working at the site on the night the accident occurred. First, undisputed evidence indicates that the night crew had compacted in the excavations prior to the night of the accident. Second, the Bureau was aware of this previous activity. Sintek, the Bureau's safety inspector, told Schwisow, the Supervisory Construction Inspector, that the night crew had compacted before. Schwisow's claim that he did not believe that night compacting would occur belies his own testimony that, in Schwisow's words, night compacting "was being done with our knowledge." This discrepancy is particularly startling when it is recalled that other aspects of their testimony were implausible. Third, the Bureau was also aware that the excavation was deeper than necessary, supported by an unreinforced lining, not properly "chipped-off," sloped in excess of the governing standards, prone to sloughing, and in need of compacting. The majority ignores these facts to conclude that Sintek's and Schwisow's testimony justify a holding of non-negligence. Because the Bureau was aware of these facts, the Bureau was negligent for not rectifying these unsafe conditions, or at least banning compacting until safe working conditions were established.[2]
 
 Conclusion
 
 34
 Nebraska law burdened the Bureau with a duty to ensure the safety of its contractor's workers. This burden is not evaluated under a strict liability standard. The law understands that despite numerous safety precautions, accidents still occur. Here, however, the Bureau knew that the night crew had compacted before and that the excavation was dangerous for the reasons stated above. The Bureau's defense that it did not anticipate night compacting is simply unacceptable when the Bureau's own Supervisory Construction Inspector testified that night compacting "was being done with our knowledge." For this reason, and those stated in the original panel opinion, I respectfully dissent.
 
 
 
 [1]
 The United States filed a third-party complaint against Western Contracting seeking contribution and indemnity for Western's negligence in causing the accident
 
 
 [2]
 The Honorable Warren K. Urbom, United States District Judge for the District of Nebraska
 
 
 [3]
 Neb.Rev.Stat. § 48-425 provides:
 All scaffolds, hoists, cranes, stays, ladders, supports or other mechanical contrivances used in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct or other structure, shall be erected and constructed in a safe, suitable and proper manner....
 
 
 [4]
 Neb.Rev.Stat. § 48-433 provides:
 All architects or draftsmen in preparing plans, specifications or drawings to be used in the erection, repairing, altering or removing of any building or structure within the terms and provisions of sections 48-425 to 48-435, shall provide in such plans, specifications and drawings for all the permanent structural features or requirements specified in said sections. Any person violating the provisions of this section shall be guilty of a Class IV misdemeanor.
 
 
 [5]
 Murdock argues that sufficient control to create a nondelegable duty is present in the circumstances of this case. He claims that the degree of control here is equal to that found in Simon v. Omaha Public Power Dist., 189 Neb. 183, 202 N.W.2d 157 (1972). Simon is not persuasive. In Simon, the defendant was not only the owner of the premises where the accident occurred, but also acted as general contractor. Id
 
 
 [6]
 The district court stated:
 Sintek testified that he did not believe that the workers in the excavation were in imminent danger. The only workers who he saw in or near the excavation were the loader operator and a worker who was watering the walls of the excavation from above the hole. He did not recall ever seeing workers using whackers in excavations in which abutments had not already been placed. He had "eyeballed" the slopes on each of his visits to the site and had found that they were approximatly [sic] 45 degrees. He also attempted to inform Western's foreman of the unnecessary overexcavation and he informed his own supervisor of his concerns about the unnecessary excavation.
 Schwisow's testimony, in addition to his testimony recounted above, established that he observed the site at the end of the normal workday and that he had no knowledge that the night crew would be working in that particular excavation that night. There was testimony that the night crew, until the night of the accident, had never worked with whackers in a bridge abutment excavation on this project, although the night crew had previously worked with whackers to compact the soil around abutments after they had been placed.
 The testimony also showed that safety inspectors were not assigned to the night crew as a matter of course. The exception to this policy arose when the work that was performed by the night crew had to be ready to go the following morning so that the day crew could begin another task immediately. Wilson, the chief inspector, testified in his deposition that he probably would have assigned an inspector to the night crew had he known that the excavation was to be backfilled and compacted, but that he had no way of knowing that workers would be there because the contractor did not inform the Bureau of any plans to have workers there.
 Slip op. at 7-8 (Mar. 15, 1989).
 
 
 [1]
 Erickson's discussion of an earlier Nebraska case demonstrates that this alternative analysis is the proper one under Nebraska law. In this discussion, the Supreme Court of Nebraska noted that in Hickman v. Parks Construction Co., 76 N.W.2d 403 (Neb.1956), "[d]efendant argued that it was not liable, as it had left the matter of protecting the site to the officer in charge of the club. We held the duty to protect against the danger to be nondelegable." Erickson v. Monarch Indus., Inc., 347 N.W.2d at 106. Thus, according to Nebraska law, reaching the nondelegable duty issue is not contingent on first finding that the principal retained control over the work
 
 
 [2]
 Although the majority does not reach the discretionary function exception of the Federal Tort Claims Act, 28 U.S.C. § 2680(a) (1988), I restate my agreement with the district court that the Bureau's conduct here was not protected by this exception. See Murdock v. Employers Ins. of Wausau, 917 F.2d 1065, 1073 (8th Cir.1990) vacated, reh'g granted January 3, 1991