CHRISTINA L. MCKINSTRY, SPECIAL ADMINISTRATOR OF THE
ESTATE OF EUGENE MCKINSTRY, DECEASED, APPELLANT, V.
COUNTY OF CASS ET AL., APPELLEES.

424 N.W.2d 322

Filed June 10, 1988.    No. 86-250.

Frank L. Burbridge, Michael G. Connery, and Frank A. Taylor of Kutak Rock & Campbell, for appellant.

John R. Douglas of Cassem, Tierney, Adams, Gotch & Douglas, for appellee County of Cass.

Michael A. Fortune of Erickson & Sederstrom, P.C., for appellee WeWeldit & Repair, Inc.

J. Arthur Curtiss of Baylor, Evnen, Curtiss, Grimit & Witt, for appellee Husker Steel Corporation.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and BLUE, D.J.

SHANAHAN, J.

Eugene McKinstry died as the result of an accident during construction of a bridge for a Cass County road. Christina L. McKinstry, special administrator (personal representative) of the estate of Eugene McKinstry, appeals from the judgment of the district court for Cass County, denying recovery on the McKinstry claim in a wrongful death action against Husker Steel Corporation (Husker Steel), WeWeldit & Repair, Inc. (WeWeldit), and County of Cass (county). Cornhusker Casualty Company was joined as a defendant on account of its status and subrogation interest as the insurance company which provided workers' compensation coverage for WeWeldit, Eugene McKinstry's employer. See Neb. Rev. Stat. § 48-118 (Reissue 1984).

Plaintiff's action against the county was brought pursuant to the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1983 & Cum. Supp. 1984). The action against the other defendants was based on common-law negligence. All actions were tried to the court.

### STANDARD OF REVIEW

In a bench trial of a law action, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. *Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 390 N.W.2d 487 (1986). In reviewing a judgment awarded in a bench trial of a law action, the Supreme Court does not

reweigh evidence but considers the judgment in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Zeller v. County of Howard*, 227 Neb. 667, 419 N.W.2d 654 (1988); *Alliance Nat. Bank v. State Surety Co., supra.* Regarding a question of law, the Supreme Court has an obligation to reach its conclusion independent from the conclusion reached by a trial court. *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29, 60 A.L.R. 4th 953 (1986).

## CONSTRUCTION AGREEMENTS

The county entered a written agreement with Husker Steel to construct a bridge for a road over Dee Creek. Husker Steel prepared blueprints for the bridge project, which included "all steel, concrete, erection [and] 1 shop coat of paint on [the] superstructure." In view of its past experience and in reference to its agreement with Husker Steel, the county requested that WeWeldit perform the actual construction in erecting the bridge. Husker Steel then contracted with WeWeldit to build the bridge according to Husker Steel's blueprints and agreed to pay WeWeldit for that work. The Husker Steel-county contract made no provision for trenching, excavating, and earthwork as a part of the bridge project. Keeping with its custom and apart from its agreement with Husker Steel, the county undertook all "responsibility for excavation" concerning the bridge project. In earthwork and excavating for projects such as the construction contracted with Husker Steel, the county used its own equipment and paid its employees who did such work.

## CONSTRUCTION SITE AND ACCIDENT

To construct the bridge, WeWeldit erected a concrete "headwall" parallel with and on each side of the creek. Each headwall supplied the main support for the bridge and roadbed overhead. To support each headwall and prevent water from coursing between the headwall and the creek bank, a vertical "wingwall" was attached at each end of the headwall and ran obliquely into the creek's bank for a distance of 20 feet. Construction of a wingwall required a trench immediately adjacent to the wall for work at the base of and along that wall, such as securing the wingwall's attachment to the headwall. For

that excavation, Karl Neumeister, a county employee, appeared with the county's backhoe at the construction site to dig the wingwall trench. Inasmuch as Husker Steel had no active participatory role in erecting the bridge, no one from Husker Steel was present for the excavation by Neumeister. Although WeWeldit's foreman indicated the centerline, depth, and length of the proposed wingwall trench, the foreman did not direct or supervise Neumeister regarding the width of the trench or the slope from the bottom of the trench to the surface of the creek bank. Along the wingwall, Neumeister excavated a trench which was 13 feet deep, 19 feet long, and 5 feet wide at the top of the trench. Before WeWeldit's employees, including Eugene McKinstry, entered the trench to work on the wingwall, WeWeldit's foreman inspected and approved the trench excavated by Neumeister. While WeWeldit's employees were working in the trench along the wingwall, Neumeister noticed that McKinstry was digging in the creek bank, which formed a trench wall, trying to keep water from seeping into the trench. Approximately 3 hours after Neumeister had left the construction site, the trench collapsed, burying McKinstry, who died from asphyxiation.

## PLEADINGS

In the wrongful death action, Christina McKinstry alleged that Husker Steel was the general or prime contractor for all aspects of construction in the bridge project; WeWeldit was Husker Steel's subcontractor to build the bridge; and the county, as owner of the construction site, supplied trenching, excavating, and earthwork for construction of the bridge. Christina McKinstry also alleged that each of the defendants had separately and negligently omitted certain measures which would have prevented the accident, such as each defendant's failure to "properly stabilize, shore, maintain and brace the Trench; . . . properly compact the walls of the Trench; [and] properly grade or slope the sides of the Trench."

In their answer, WeWeldit and Cornhusker Casualty generally denied liability, but admitted that Eugene McKinstry was an employee of WeWeldit and asserted their subrogation interest in any recovery on account of Eugene McKinstry's death.

The county answered and alleged that Eugene McKinstry was contributorily negligent in a degree which barred recovery and that Eugene McKinstry had "assumed the risk." Additionally, the county alleged that Eugene McKinstry's death was the result of the negligence of persons over whom the county had no control.

In its answer, Husker Steel raised the affirmative defenses of contributory negligence and assumption of the risk.

## TRIAL

As a part of McKinstry's case, a soil engineer testified that the earth at the wingwall excavation was unable "to sustain the configuration of the trench that was excavated because of the relaxation and the deformation that's associated . . . [a]nd once that happens, the strength is reduced . . . [a]nd in this particular case, the wall of the trench was too steep to be maintained in that shape and collapse occurred." In the engineer's opinion, collapse of the trench could have been prevented by sloping the wall or bank of the trench at an angle of 45° or less, rather than the 70° angle existing after excavation, or by use of horizontal braces or shoring for the trench. The engineer also testified that WeWeldit's postexcavation activity in construction near the trench was "not significant relative to the stability of the trench." An expert in trenching testified that the "natural weight of the soil" caused the trench wall to collapse, because the "slope" was much too steep. A trench wall with a slope of 45° or supported by some type of "bracing system" would have prevented collapse of the wingwall trench.

Karl Neumeister, the county's backhoe operator, testified that he would have dug the trench wider or with a greater slope if WeWeldit's foreman would have requested such changes in place of the trench actually excavated. Neumeister acknowledged that WeWeldit's foreman gave no direction or instruction concerning the slope of the trench wall and admitted that he could have sloped the trench wall without WeWeldit's request. When asked whether the trench was sloped "far enough," Neumeister replied, "I guess not." In further questioning by McKinstry's lawyer, Neumeister responded:

Q- Then couldn't you have continued to work on that ditch until you made it safe?

A- Well, I had a time limit on it. They wanted to get busy and get to working. Yes, I'll have to put it.

Q- Yes, you could have continued to work on it?

A- Yes.

Q- Your answer is yes?

A- Yes.

Q- And you could have dug out some more dirt; is that right?

A- Yes.

Q- And sloped it back properly?

A- Yes.

Over objection by the McKinstry lawyer, the county introduced as evidence the regulations promulgated under the federal Occupational Safety and Health Act ("OSHA"), 29 U.S.C. §§ 651 et seq. (1982), pertaining to safe trenching and liability in trench excavation.

## FINDINGS BY TRIAL COURT

The district court made specific findings of fact regarding each of the defendants.

The district court found that WeWeldit was Husker Steel's subcontractor in the bridge construction and that Husker Steel did not supervise or control WeWeldit's employees or have any contractual obligation concerning employees of WeWeldit or the county. Therefore, the district court concluded that Husker Steel was neither negligent by its own nonfeasance, as alleged, nor vicariously liable for any negligence of its subcontractor, WeWeldit.

Concerning WeWeldit, the district court found that, notwithstanding the county's furnishing labor and equipment for excavation of the trench wall, WeWeldit could have requested changes in the work done by the county but accepted the county's excavatory work without any requested change. The district court concluded that "the collapse of the wall could have been prevented either by shoring or by requiring a greater slope to the wall" and that Eugene McKinstry "did not voluntarily assume a known risk." The district court found that WeWeldit was negligent "in failing to take either of the steps [adequate shoring or slope of the trench wall] which would have prevented the collapse of the trench wall" and, because Eugene

McKinstry's "negligence, if any, was slight in comparison with the negligence" of WeWeldit, entered judgment against WeWeldit for $244,521.

In view of WeWeldit's involvement in the excavation of the trench, the district court found that the county was not negligent, especially since WeWeldit accepted the county's excavatory work and could have requested, but did not request, any change in the manner or nature of excavation by the county.

After the trial, WeWeldit and Cornhusker Casualty filed a joint motion for vacation of the judgment, based on the Nebraska Workers' Compensation Act. In response to that motion, the district court set aside its judgment against WeWeldit and Cornhusker Casualty. See *P.A.M. v. Quad L. Assocs.*, 221 Neb. 642, 380 N.W.2d 243 (1986) (Nebraska Workers' Compensation Act provides an exclusive remedy for an employee's injury arising out of and in the course of employment and precludes an employee's common-law action against the employer for negligence).

Christina McKinstry contends that the district court erred in its finding that the county was not liable in the collapse of the wingwall trench and in concluding that Husker Steel was not liable for the negligence of its subcontractor, WeWeldit, in excavation of the trench.

"To prevail in an action based on negligence, a plaintiff must prove four essential elements: the defendant's duty not to injure the plaintiff, a breach of that duty, proximate causation, and damages." *Zeller v. County of Howard*, 227 Neb. 667, 671, 419 N.W.2d 654, 657 (1988). See, also, *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987).

Christina McKinstry relies primarily on two cases to support her negligence claim against the county and Husker Steel, namely, *Hickman v. Parks Construction Co.*, 162 Neb. 461, 76 N.W.2d 403 (1956), and *Erickson v. Monarch Indus.*, 216 Neb. 875, 347 N.W.2d 99 (1984).

In *Hickman, supra*, Parks contracted with the Officers Club at Offutt Air Force Base to make improvements which required excavation of a ditch or trench on an area near the Air Force Officers Club. A Major Morrow was in charge of the club at the time of an evening party attended by Hickman. When Hickman

left the club and walked toward the parking lot located beyond the excavation site, he fell into the excavation. Among its contentions to avoid liability or absolve its negligence, Parks claimed that Major Morrow, as manager of the club which had contracted for the improvement, should have taken precautions to protect against anyone's falling into the excavation. However, in characterizing an excavation as a "dangerous place" or an "operation likely to cause injury or damage," this court stated:

> The general rule, which governs where a party is responsible for a dangerous place, agency, instrumentality, or operation likely to cause injury or damage to persons or property rightfully in its proximity, is that he is charged with the duty of taking due and suitable precautions to avoid injury or damage to such persons or property, and his failure to take such precautions constitutes negligence. [Citations omitted.]

> This rule applied to excavations requires a contractor making an excavation on property of another to provide such protection as would guard persons rightfully on the property against any contingency that was reasonably to be anticipated. [Citations omitted.]

> . . . .

> . . . A witness who was in charge of the work of the defendant [Parks] testified substantially that he did not take any steps to protect the east portion of the excavation but that he left that matter to Major Morrow who was in general charge of the operation of the club. There was no evidence however that Major Morrow had or exercised any directory or supervisory control over the performance of the defendant under its contract or of anything in relation thereto.

> The defendant could not be relieved from its responsibility to protect against the danger from the open excavation by reliance upon Major Morrow to protect against that danger. The person on whom the duty devolves is not excused from taking the necessary precautions by contracting with or relying on others to take necessary precautionary measures. [Citations

omitted.]
162 Neb. at 469-70, 76 N.W.2d at 409-10. See, also, *Rose v. Buffalo Air Service*, 170 Neb. 806, 104 N.W.2d 431 (1960): A person on whom a duty of due care devolves is not excused from taking necessary precautions by contracting with or relying upon others to take necessary precautionary measures.

*Erickson, supra*, involved a wrongful death claim as the result of Erickson's injuries when a transformer exploded, causing the transformer's door to break open and fatally strike Erickson. Monarch was the general contractor in construction of the transformer facility, but Monarch's subcontractor, Walters-Heiliger, installed the transformer. A jury found the subcontractor liable for its negligence and Monarch vicariously liable for its subcontractor's negligence. Judgment on the verdict was affirmed, and we said:

> Monarch contends that it cannot be held liable for the negligence of Walters-Heiliger. Monarch relies on the general rule that the employer of an independent contractor is not liable for physical harm caused to another by the act or omissions of the contractor or his servants. *Sullivan v. Geo. A. Hormel and Co.*, 208 Neb. 262, 303 N.W.2d 476 (1981). There are exceptions to this rule of nonliability. The general contractor remains liable for the negligence of the subcontractor "if he retains 'control' of the work—or if, by rule of law or statute, the duty to guard against the risk is made 'nondelegable'." *Funk v General Motors Corp.*, 392 Mich. 91, 101, 220 N.W.2d 641, 645 (1974).

> In the present case Monarch had a nondelegable duty to provide a facility which was safely wired. "The nondelegable duty exception is based upon the theory that certain responsibilities of a principal are so important that the principal should not be permitted to bargain away the risks of performance." *Arsand v. City of Franklin*, 83 Wis. 2d 40, 54, 264 N.W.2d 579, 586 (1978), at n.8.

> The nondelegable duty exception to the rule of nonliability was described by the court in *Witucke v Presque Isle Bank*, 68 Mich. App. 599, 610, 243 N.W.2d 907, 912 (1976): "[W]e believe that an essential element of

the doctrine is the failure of the principal to see that all appropriate precautions are taken by the one to perform the inherently dangerous task. The doctrine, in short, says that the principal is negligent, and hence liable, because it has allowed the independent contractor to be negligent in performing the job. There is a nondelegable duty to see that the work is done with the requisite degree of care; when the contractor fails in fulfilling its duty of care, the principal has breached its own precautionary duty."

216 Neb. at 879-80, 347 N.W.2d at 105.

Referring to *Hickman v. Parks Construction Co.*, 162 Neb. 461, 76 N.W.2d 403 (1956), we stated in *Erickson v. Monarch Indus.*, 216 Neb. 875, 880, 347 N.W.2d 99, 106 (1984):

[T]he defendant had entered into a contract with an officers' club to improve its facility. Plaintiff was injured when he fell into an open excavation. Defendant argued that it was not liable, as it had left the matter of protecting the site to the officer in charge of the club. We held the duty to protect against the danger to be nondelegable.

The *Erickson* court continued:

In the present case Monarch entered into an agreement to construct the grain drying facility. Monarch employed Walters-Heiliger to perform the necessary electrical wiring. Walters-Heiliger was required to exercise utmost care and skill in providing the proper components and in wiring the facility, as it was providing a dangerous commodity. [Citations omitted.] Monarch could not delegate its duty to provide a facility that was wired safely.

Monarch and Walters-Heiliger contend that after the facility was completed and accepted by Krieger [owner of facility], the contractor and subcontractor cannot be held liable for defects which injure third persons. The general rule was stated in *Stover v. Ed Miller & Sons, Inc.*, 194 Neb. 422, 425, 231 N.W.2d 700, 703 (1975): " 'A construction contractor is not liable for injuries or damage to a third person with whom he is not in contractual relation resulting from the negligent performance of his duty under his contract with the contractee where the injury or damage is sustained after the work is completed

and accepted by the owner.' "

The exception to this rule was described in *Florida Freight Terminals, Inc. v. Cabanas*, 354 So. 2d 1222, 1225 (Fla. App. 1978): "An independent contractor is not liable for injuries to third parties after the contractor has completed his work and turned the project over to the owner or employer and it has been accepted by him *unless* the parties were dealing with inherently dangerous elements or the defect at issue was latent and could not have been discovered by the owner or employer."

In *Simmons v. Owens*, 363 So. 2d 142, 143 (Fla. App. 1978), the court said: "The general rule . . . is subject to the exception that a contractor is not relieved of liability where he creates a dangerous condition or unreasonable risk which is latent and not discoverable by reasonable inspection." See, also, *Slavin v. Kay*, 108 So. 2d 462 (Fla. 1959).

In the present case the defect in the wiring of the transformer was latent and not reasonably discoverable by the owner, Krieger. Moreover, the installation of the electrical transformer was an inherently dangerous task such that the law will not relieve the contractors' liability for their negligence merely because Krieger accepted the facility.

216 Neb. at 881-82, 347 N.W.2d at 106.

In *Foltz v. Northwestern Bell Tel. Co.*, 221 Neb. 201, 213, 376 N.W.2d 301, 309 (1985), this court, citing *Erickson*, stated:

A nondelegable duty means that an employer of an independent contractor . . . by assigning work consequent to a duty, is not relieved from liability arising from the delegated duties negligently performed. [Citation omitted.] As a result of a nondelegable duty, the responsibility or ultimate liability for proper performance of a duty cannot be delegated, although actual performance of the task required by a nondelegable duty may be done by another. [Citation omitted.] One on whom a nondelegable duty is enjoined may not, by employing an independent contractor, escape vicarious responsibility and liability for proper performance of that

nondelegable duty. [Citations omitted.]

See, also, *Greening v. School Dist. of Millard*, 223 Neb. 729, 393 N.W.2d 51 (1986).

"A general contractor, in control of the premises where work performance under a contract with the owner is being carried out, owes a duty to persons rightfully on the premises to keep the premises in a reasonably safe condition while the contract is in the course of performance." *Sullivan v. Geo. A. Hormel and Co.*, 208 Neb. 262, 265, 303 N.W.2d 476, 478 (1981). See, also, *Hand v. Rorick Constr. Co.*, 190 Neb. 191, 206 N.W.2d 835 (1973).

In McKinstry's case, it is beyond question that trenching, excavating, and earthwork were not part of the project contracted between Husker Steel and the county. The reason for the deliberate deletion or exclusion of such earthwork from the Husker Steel-county contract was the county's expressed wish and direction, consistent with the county's custom, that the county was independently obligated to supply all trenching or excavating for the bridge project. The evidence is virtually overwhelming, and the trial court concluded, that the trench's collapse might have been avoided by adequate sloping of the trench wall which, for all practical purposes, was perpendicular to the bottom of the trench. The trench wall was excavated at almost twice the appropriate angle which would have prevented the trench wall from collapsing on account of its own weight. Additionally, adequate shoring may well have checked the earthen wall's tendency to buckle under its own weight. Negligence, then, permeated the excavatory work. Whose negligence?

## FINDING FOR THE COUNTY

Implicit in the district court's finding for the county is the conclusion that WeWeldit, not the county, had the duty to take precautionary measures which would have prevented the accident, namely, adequate shoring and an appropriate slope for the trench wall. Yet, in view of its agreement with Husker Steel, the county had the responsibility or obligation to provide excavatory work. Thus, in reference to the bridge construction and participation in the project, the county had a nondelegable duty to use due care to protect persons against injury from the

hazards or risks which inhered in the particular excavation, trenching, and earthwork undertaken by the county. See *Hickman v. Parks Construction Co.*, 162 Neb. 461, 76 N.W.2d 403 (1956). Also, the county was not relieved of its nondelegable duty when WeWeldit accepted the county's excavatory work for the bridge project. See *Hickman v. Parks Construction Co., supra*. The county's turning the finished earthwork, such as it was, over to WeWeldit did not absolve the county from liability for its negligence concerning the inherently dangerous trench excavated by the county. See *Erickson v. Monarch Indus.*, 216 Neb. 875, 347 N.W.2d 99 (1984). Nevertheless, the district court exonerated the county from its nondelegable duty by finding that such nondelegable duty had been delegated to or assumed by WeWeldit. Although the district court attributed all the negligence to WeWeldit, which, according to the district court, had breached its duty to take precautionary measures regarding the trench, the nondelegable duty imposed on the county as the result of the trench's inherently dangerous condition precluded a transfer or transposition of liability from the county to WeWeldit. Consequently, we find that the district court's conclusion, exonerating the county from liability for its negligence demonstrated by the record, is clearly erroneous. The judgment against McKinstry relative to the county is, therefore, reversed.

## FINDING FOR HUSKER STEEL

McKinstry contends that Husker Steel, as a contractor, is liable for failure to provide safety in the construction site. There is no evidence that Husker Steel, as a general contractor, was "in control of the premises where work performance under a contract with the owner" was being carried out. *Sullivan v. Geo. A. Hormel and Co.*, 208 Neb. 262, 265, 303 N.W.2d 476, 478 (1981). To impose the duty on a contractor "to keep the premises in a reasonably safe condition while the contract is in the course of performance," the general contractor must be "in control of the premises." *Sullivan v. Geo. A. Hormel and Co., supra*. If Husker Steel may be characterized as a general contractor, nothing indicates that Husker Steel at any point controlled the construction site. Without such control of the construction site or "premises," Husker Steel, as a general

contractor, owed no duty to WeWeldit's employees regarding the construction site's reasonably safe condition during performance of the contract for construction of the bridge. Reduced to a fundamental expression, the exculpatory conclusion regarding Husker Steel's liability for safety in the construction site is no control, no liability.

McKinstry next contends that if there is a contractor-subcontractor relationship between Husker Steel and WeWeldit concerning the bridge project, then, in accordance with *Erickson v. Monarch Indus., supra,* Husker Steel could not delegate to WeWeldit the duty to provide safety in the bridge project, including the excavatory work which caused Eugene McKinstry's death. As a result of that nondelegable duty, McKinstry argues, Husker Steel was liable for negligence of WeWeldit in the excavatory work for the bridge. However, Husker Steel's role in the bridge project is not so comprehensive as characterized by McKinstry.

A contractor is one who enters into a contract with the owner of certain property to perform some type of work on that property. See *Richard v. Ill. Bell Telephone Co.*, 66 Ill. App. 3d 825, 383 N.E.2d 1242 (1978). On the other hand, a subcontractor is one who independently contracts with the contractor to do part of the work which the contractor has previously agreed to perform. See, *Miller et al. v. Cornell-Young Co. et al.*, 171 S.C. 228, 171 S.E. 790 (1933); *Murray v. Aaron Mizell Trucking Company*, 286 S.C. 351, 334 S.E.2d 128 (1985); *Richard v. Ill. Bell Telephone Co., supra.*

The Husker Steel-county contract did not require that Husker Steel supply any trenching, excavating, or earthwork, which work was left entirely and independently to the county. Beyond its blueprints and products supplied in the bridge project, Husker Steel never actively and directly participated in erecting the bridge. Only the county had the obligation to provide the earthwork for the bridge, which eventually caused Eugene McKinstry's death. Therefore, excavation or trenching for the bridge was a matter outside the contractual obligations imposed on Husker Steel as the result of its agreement with the county. Consequently, neither by contract nor by conduct did Husker Steel obligate itself for earthwork in erecting the bridge.

If Husker Steel, as a contractor, was not obligated to supply excavatory work for the bridge, WeWeldit, as Husker Steel's subcontractor, was not obligated to render excavatory work which its contractor had not agreed to perform and which its contractor had not otherwise undertaken as a part of the contracted bridge project. As an alternative expression of the situation, WeWeldit's participation in excavation or trenching for the bridge was work which Husker Steel had not agreed to perform. One can hardly be characterized as a subcontractor of work not to be performed by the contractor. Thus, if WeWeldit were negligent in the excavatory work, WeWeldit's negligence occurred outside Husker Steel's contracted work and, consequently, happened when WeWeldit was not acting as the subcontractor of Husker Steel. Under the circumstances, Husker Steel contracted no responsibility to supply excavation or trenching for the bridge project and, correspondingly, owed no duty to provide safety in the course of the excavatory work in erecting the bridge. Therefore, Husker Steel was not liable, directly or vicariously, for negligence in the fatal trenching or excavation. On account of the evidence, or lack of evidence, presented in the record which we have reviewed, we cannot conclude that the district court was clearly erroneous in its finding that Husker Steel was not liable for any negligence which caused the death of Eugene McKinstry. The judgment against McKinstry concerning Husker Steel is affirmed.

Regarding McKinstry's question about the admissibility of the OSHA regulations and in view of our disposition of other questions in this appeal, it is unlikely that the particular evidential question will arise on retrial of this matter.

Because we have reversed the judgment pertaining to the county, these proceedings are remanded to the district court for a new trial on McKinstry's claim against the county.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR A NEW TRIAL.