NORMAN SCHUSTER AND MARILYN SCHUSTER, APPELLEES, V. LELAND BAUMFALK AND BONNIE BAUMFALK, DOING BUSINESS AS BAUMFALK BINS AND EQUIPMENT, APPELLANTS.

429 N.W.2d 339

Filed September 16, 1988. No. 86-985.

Alan L. Plessman for appellants.

Paul Korslund, of Everson, Wullschleger, Sutter, Sharp, Korslund & Willet, for appellees.

BOSLAUGH, CAPORALE, and GRANT, JJ., and BUCKLEY, D.J., and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

Defendants appeal a $47,000 jury verdict and judgment against them involving their alleged negligent repair of plaintiffs' farm equipment (conveyor) while using a brazing torch, causing nearby loose silage and haylage to ignite, smolder, and hours later to burst into flame, damaging plaintiffs' buildings and equipment. We affirm.

There is little dispute concerning these facts. Norman and Marilyn Schuster, plaintiffs, conduct a farming and livestock-feeding operation on their farm near Pickrell, Gage County, Nebraska. Terry, their son and employee of 10 years, lives on the farm. Plaintiffs store silage and haylage (both hereafter called silage) in an 80-foot-tall silo. Silage is removed from the silo and transported to an outside livestock feed bunk by an electric powered mechanical system that includes a conveyor housed with other equipment in a shed adjacent to the silo. The conveyor is a metal trough, open at the top, with 14-inch sides installed at an angle and with one end (the west end) resting on the concrete floor near the silo base and the

other end elevated to a height of 5 feet. While stored in the silo, the silage is about 40 percent moisture. As needed, the feed is mechanically discharged from the base of the silo into the conveyor, where paddles attached to a moving chain push the feed along the conveyer to the feed bunk. Sometimes the silage falls from the conveyor onto the shed floor. Plaintiffs remove the accumulation of the silage periodically.

After 11 years' use, the conveyor needed repairs; the chain was broken, paddles were bent, and there was a hole in the base of the trough. On May 15, 1985, Terry requested defendant Leland Baumfalk, Pickrell, Nebraska, to repair the conveyor. For about 20 years, Leland had been in the business of the sale, repair, and maintenance of similar farm equipment, including welding and brazing. Leland arrived at the farm at about 10 a.m. with his employee, Gale Rickers, who had 8 years' experience in brazing.

The hole was repaired first. A 6-foot piece of $1/8$-inch metal was cut to fully cover the hole in the base plate; this patch was then sealed into place by brazing it to the base and sides of the conveyor. Simply stated, brazing is a process to unite and seal metals together by melting a bronze rod at high temperature with an acetylene torch; the molten metal and a flux seal the metal patch to the conveyor. Brazing has a distinct odor. Heat radiates from the metal surfaces being brazed.

Terry was present when Leland and Rickers arrived at the farm. All three observed that there was an accumulation of loose silage in the shed, and, around the west end of the conveyor, it was more than 2 feet high. Before Rickers started brazing he pushed some of the silage aside—to about 12 inches away from the conveyor. The brazing to cover the hole in the plate took 25 to 30 minutes, during which time Terry was nearby. Rickers then repaired the chain and straightened some of the paddles, followed by pouring water over the paddles to cool them. When this was completed, the whole conveying system was mechanically started to see if it functioned. No visible evidence of fire or smoke was noticed by either Terry or Rickers at any time; however, there is conflict in the evidence concerning the presence of burning smells/odors. Rickers left the area about 12 p.m. Norman came to the farm about 11

a.m., after the brazing repairs were completed; he entered the shed and noticed a burning odor, but saw no evidence of fire. He checked the contents of the silo for a possible fire source, but saw no evidence of fire either in the silo or the shed; he made no further investigation for fire in the shed and moved no silage. Norman momentarily returned to the shed at about 5:30 p.m. and again noticed a burning odor, but assumed it was related to the brazing. Terry was also in the shed area about 5:30 p.m. and noticed the same odor, but attributed it to the brazing repairs. At about 4 a.m. on May 16, 1985, Terry was awakened by a passerby advising that the shed was on fire. The fire destroyed parts of the conveying equipment and damaged the silo. Following the fire an official investigation and written report of the fire was made by Jim Kuticka, chief investigator, Nebraska State Fire Marshal's office.

The 14 assigned errors are consolidated: The court erred in (1) allowing expert witness Peter Sturner to testify concerning the origin and cause of the fire; (2) allowing plaintiffs' expert witnesses Larry Donnling and Eugene Schoen to testify concerning values; (3) sustaining plaintiffs' objection to the testimony of defendants' expert witness, Homer Cline, on the issue of values; (4) refusing to submit to the jury the issue of plaintiffs' assumption of risk; (5) denying defendants' motions to dismiss and for a directed verdict; and (6) denying defendants' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

Plaintiffs' allegation of negligence as submitted to the jury was that defendants failed to clear the area of combustible material where they were doing brazing when they knew or should have known that such failure constituted an unreasonable risk of fire.

Defendants' affirmative defense of contributory negligence as submitted to the jury was that (1) plaintiffs failed to seek out the source of smoke detected at or about 5:30 p.m. on May 15, 1985, and (2) failed to clean and clear silage from the shed after detecting the smell of smoke in the evening of May 15.

" 'To prevail in an action based on negligence, a plaintiff must prove four essential elements: the defendant's duty not to injure the plaintiff, a breach of that duty, proximate causation,

and damages.' " *McKinstry v. County of Cass*, 228 Neb. 733, 739, 424 N.W.2d 322, 327 (1988).

Ordinarily, negligence is a question of fact and may be proven by circumstantial evidence. All that the law requires is that the facts and circumstances proved, together with the inferences that may be legitimately drawn from them, shall indicate, with reasonable certainty, the negligent act complained of. *Porter v. Black*, 205 Neb. 699, 289 N.W.2d 760 (1980).

## EXPERT WITNESSES

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. Neb. Rev. Stat. § 27-702 (Reissue 1985).

The determination of the qualifications of an expert witness is largely a matter within the discretion of the trial judge, whose rulings on receiving and excluding an opinion will be reversed on appeal only when an abuse of discretion is shown. *Herman v. Lee*, 210 Neb. 563, 316 N.W.2d 56 (1982).

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. Neb. Rev. Stat. § 27-704 (Reissue 1985). The admissibility of expert testimony is ordinarily within the discretion of the trial court, and its ruling will be upheld in the absence of an abuse of discretion. See *Shover v. General Motors Corp.*, 198 Neb. 470, 253 N.W.2d 299 (1977).

Plaintiffs' witness Peter Sturner, Lincoln, Nebraska, had been employed for 5 years by Midwestern Fire Consultants, Inc., to make fire investigations to determine cause and origin of fires. His qualifications included a B.A. degree in sociology; employment as an investigator for the Nebraska State Fire Marshal's office from 1976 to 1981, including 3 months as acting State Fire Marshal; attendance at many seminars on fire investigations and educational courses; and a certificate from the International Association of Arson Investigators. Sturner was present during a part of the in-court testimony.

In addition, he had reviewed the official report of Jim Kuticka; examined photographs of the burned conveyor and general area; and reviewed the depositions of witnesses Norman Schuster, Terry Schuster, Leland Baumfalk, and Gale Rickers, which Sturner described as normal investigative procedures that he followed. Sturner had previously investigated other similar fires. After defendant was granted voir dire, Sturner was permitted to testify that the fire originated around the west end (resting on the concrete) of the conveyor in the shed and that "the cause of the fire is from heat radiating from the brazing process coming in contact with the silage or combustible material." Sturner also testified that electrical sources and spontaneous combustion were possible sources of fire but not probable sources of causing this fire.

Over further objection, Sturner testified,

> As I understand the brazing process, you heat the metal and then you have in this particular case bronze was used to form the weld, the mechanism with which to fasten the metal plate. Bronze melts at a temperature of between 1300 and approximately 1900 degrees Fahrenheit, so you would have to heat the metal that you're going to put the bronze onto at least to that particular degree to get the bronze to melt into there. Silage or haylage, either way, would burn at approximately 350 to 450 degrees. . . . 1300 to 1900 degress [sic] that the brazing would create would be certainly enough to ignite that if it was close enough.
>
> . . . .
>
> . . . [T]he metal was heated during the brazing process with the torch. This metal is going to have some heat to it, and the heat is going to radiate out to the silage and ignite the silage.
>
> . . . .
>
> . . . It's going to radiate horizontally, and it's going to go up and down the length of the metal as well of [sic] the conveyor.
>
> . . . .
>
> . . . [T]he silage would probably have to be within two or three feet in order to ignite.
>
> . . . .

. . . It would tend to smolder first.

. . . .

. . . It can go on for several hours to more than a day or two before it breaks out.

. . . .

. . . The right combination of air, the right combination of fuel would cause it to burn.

Larry Donnling, operations manager of Huskerland Agri Systems, Geneva, Nebraska, with more than 24 years of experience in the sales, maintenance, and repair of cattle-feeding systems, installed plaintiffs' equipment, and Donnling serviced that equipment (exclusive of the silo) 1 year before the fire. Donnling was a qualified expert to testify on the cost of repairs and damages.

Eugene Schoen has been owner of Gene's Trenching and Electrical, Pickrell, Nebraska, for 9 years. He has been active in the sale and repair of farm electrical support systems, and he had repaired the electrical components of plaintiffs' feed conveyor system about six times. Schoen was qualified to give his opinion on the value of the electrical equipment before the fire. It is further noted that the objection to the question regarding Schoen's opinion was not clear, i.e., "It's already asked and answered, and no foundation to go beyond that."

There was no error in allowing witnesses Sturner, Donnling, and Schoen to testify; their credibility was for the jury.

Homer Cline was the only expert witness called by defendants on the issue of values and damages. For 7 years he had been employed as an appraiser for the Gage County assessor. A part of the foundation for Cline's proposed opinion was a description of the procedures he followed as a county tax appraiser: He personally examined the improvements, measured the buildings for square footage, established the age of the buildings, fixed a depreciation factor, and applied those factors to the Marshall-Swift manual, which is required to be used by all Nebraska county assessors. The resulting figure is taken as the fair market value of the improvement. Upon plaintiffs' voir dire, it was established that Cline's proposed opinion on value was arrived at "for purposes of arriving at an assessed value for tax purposes for Gage County, Nebraska."

The trial judge properly excluded that part of Cline's testimony. See *Lienemann v. City of Omaha*, 191 Neb. 442, 215 N.W.2d 893 (1974).

## ASSUMPTION OF RISK AND CONTRIBUTORY NEGLIGENCE

"Ordinarily the questions of negligence, contributory negligence, and assumption of risk are for the jury, but where the facts adduced with respect to those questions are such that reasonable minds can draw but one conclusion therefrom, a directed verdict is proper." *Garcia v. Howard*, 200 Neb. 57, 60, 262 N.W.2d 190, 192 (1978).

Where reasonable minds may differ as to the conclusions or inferences to be drawn from the evidence, or where there is a conflict in the evidence, such issues must be submitted to the jury. *Hansen v. Hasenkamp*, 192 Neb. 530, 223 N.W.2d 44 (1974).

Defendants argue that plaintiffs knew and comprehended the danger of fire, but voluntarily left their property exposed to the danger of fire, and they allowed the fire to damage their property.

One who knows of a dangerous condition, appreciates its dangerous nature, and deliberately exposes himself to the danger assumes the risk of injury from it. *Rodgers v. Chimney Rock P.P. Dist.*, 216 Neb. 666, 345 N.W.2d 12 (1984).

The defendants had the burden to prove the issue of assumption of risk. Before the defense of assumption of risk may be submitted to the jury, the evidence must show that the plaintiff (1) knew of the danger; (2) understood the danger; and (3) voluntarily exposed himself to the danger, which proximately caused the plaintiff's damage. *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987).

On May 15, 1985, plaintiffs knew that the loose silage on the shed floor was combustible material creating a possible fire hazard condition unless all persons in that immediate shed area, at all times and for whatever purpose or mission, exercised caution and care to avoid igniting that material. Plaintiffs knew that defendants were experienced in brazing farm machinery and equipment. Plaintiffs did not know what procedures and precautions defendants would follow while making the repairs

to the conveyor. Rather, plaintiffs relied upon defendants to take such precautions as were necessary under the circumstances and to use due care acceptable to the trade in making the brazing repairs. Under those circumstances, plaintiffs neither had knowledge of the danger of fire that defendants might cause while making the repairs nor voluntarily exposed themselves to the risk. This was neither assumption of risk as a matter of law nor a jury fact question. At most, this evidence presented negligence and contributory negligence questions of fact which were duly submitted to the jury by the court's instructions. The trial judge properly ruled that assumption of risk was not an issue.

Generally, one is contributorily negligent if (1) he breaches the duty imposed upon him by the law to protect himself from injury; (2) his actions concur and cooperate with actionable negligence of the defendant; and (3) his actions contribute to his injuries as a proximate cause. *Lynn v. Metropolitan Utilities Dist.*, 225 Neb. 121, 403 N.W.2d 335 (1987).

There is evidence, if believed by the jury, supporting defendants' claim of contributory negligence that plaintiffs knew that silage was combustible material, that it was piled up near and around the conveyor, and that the brazing repair process involved intense heat that was a possible fire hazard which could cause ignition of the silage. Plaintiffs at no time either moved or removed the silage from the area of the conveyor. The brazing process itself has a distinctive odor. When Norman came to the shed at 11 a.m., the conveyor brazing repair was completed. Norman testified that upon entry into the shed, he said to Terry, "I can smell hay burning," and Terry said, "Well, we welded on the conveyor." Norman also testified that he "could smell some smoke or something" and he could "smell hay burning." This smell reminded Norman of a spontaneous combustion fire in the silo 2 years before, so he took the precaution of starting the silo feeding machinery to check for evidence of fire in the silo; he found none. Norman saw no evidence of fire in the shed. At about 5:30 p.m. on the same day, Norman momentarily reentered the shed again to get a wrench and noticed the same smell, which he again attributed to the brazing repairs; he saw nothing unusual;

and he made no further investigation of the odors and took no other precautions by moving or removing the loose silage.

From the record, there is conflict in the evidence on this issue. Defendants had not established plaintiffs' contributory negligence as a matter of law, and it was a fact question as later submitted to the jury.

## MOTIONS

Defendants contend that the court erred in denying their motions to dismiss and for a directed verdict made at the close of plaintiffs' case in chief and at the close of all evidence—particularly (1) that plaintiffs failed to prove a prima facie case of negligence and (2) that as a matter of law plaintiffs assumed the risks and they were contributorily negligent in a manner more than slight.

A motion for a directed verdict must, for the purpose of decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence. *Hoefer v. Marinan*, 195 Neb. 477, 238 N.W.2d 900 (1976).

The issues of assumption of risk and contributory negligence having been heretofore discussed, we turn to plaintiffs' burden to prove the negligence issues of (1) defendants' duty to plaintiffs, (2) breach of duty, (3) causation, and (4) damages. *McKinstry v. County of Cass*, 228 Neb. 733, 424 N.W.2d 322 (1988).

First, defendants argue that there was no proof that they had the alleged duty to "clear the area of combustible material where they were doing brazing when they knew or should have known that such failure constituted an unreasonable risk of fire."

There is no merit to this claim. "Unless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a trade is required to exercise the skill and knowledge normally possessed by members of that trade in good standing in similar communities." (Syllabus of the court.) *Doupnik v. Usher Pest Control Co.*, 217 Neb. 1, 346

N.W.2d 699 (1984). "[A]ccompanying every contract is a common-law duty to perform with care, skill, reasonable expediency, and faithfulness the thing agreed to be done." *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 437, 345 N.W.2d 300, 305 (1984).

> Exceptional care and caution may be required where a party employs fire for a manufacturing, mechanical, or any other purpose under circumstances which render it especially dangerous to others or their property. However, even in such a case only reasonable and ordinary care, proportionate to the risks to be apprehended and guarded against, is required. What constitutes ordinary care depends upon those individual circumstances surrounding the particular use of fire . . . .

35 Am. Jur. 2d *Fires* § 12 at 593 (1967). See, also, Annot., 49 A.L.R.2d 368 (1956).

Whether or not defendants were independent contractors cannot be determined from the record. Clearly, defendants were highly qualified to make the agreed brazing repairs; they had knowledge of the existing circumstances, including the condition of possible fire hazards; they agreed and undertook to make the brazing repairs without exception; and they had a duty to plaintiffs to make such repairs with due care under the known existing conditions, including moving the silage from the brazing area, which defendants recognized by their own testimony and acts of Rickers as a fire precaution.

The general rule is that the court will only consider errors that are assigned and discussed. Neb. Rev. Stat. § 25-1919 (Reissue 1985); *Wellman v. Birkel*, 220 Neb. 1, 367 N.W.2d 716 (1985).

Defendants do not discuss in their brief the remaining elements of a negligence case: breach of duty, causation, and damages. We note, however, that the evidence fully supports the trial court's findings and orders that plaintiffs had proved a prima facie case of negligence and damages which was submitted to the jury with instructions, together with the issue of contributory negligence. The motions to dismiss and for directed verdict were properly denied.

Lastly, defendants claim as error the denial of their motion

for judgment notwithstanding the verdict or, in the alternative, for a new trial. See Neb. Rev. Stat. § 25-1315.02 (Reissue 1985).

> Where a party has sustained the burden and expense of trial and has succeeded in securing a verdict of the jury on the facts in issue, he has the right to keep the benefit of that verdict unless there is prejudicial error in the proceeding in which it was secured.

*Schmidt v. Schmidt*, 228 Neb. 758, 760, 424 N.W.2d 339, 341 (1988).

From a review of the record and all of the evidence, the trial court properly submitted to the jury all of the material issues contained in the pleadings, and there was neither prejudice nor abuse of discretion in denying defendants' motion for judgment notwithstanding the verdict or for a new trial.

AFFIRMED.