BERNARD ODDO, APPELLEE, V. SPEEDWAY SCAFFOLD COMPANY, APPELLEE, CONTRACTOR ASSOCIATES, INC., APPELLANT.

443 N.W.2d 596

Filed July 28, 1989.    No. 87-875.

Richard L. Walentine and Betty L. Egan, of Walentine, O'Toole, McQuillan & Gordon, for appellant.

Michael F. Kinney, of Cassem, Tierney, Adams, Gotch & Douglas, and Michael E. Waldeck and Randa Rawlins, of Niewald, Waldeck, Norris & Brown, for appellee Speedway Scaffold.

HASTINGS, C.J., WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and McGINN, D.J.

SHANAHAN, J.

As the result of a bench trial, Speedway Scaffold Company (Speedway) recovered a judgment against Contractor Associates, Inc. (Contractor), for $1,114,989.10 based on an indemnity agreement. Contractor appeals and claims that the district court erred in finding that Speedway was entitled to contractual indemnity, and in finding that Contractor was liable to pay an attorney fee for counsel representing the insurance carrier for Speedway's excess coverage.

## STANDARD OF REVIEW

In a bench trial of a law action, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. *Alliance Nat. Bank v. State Surety Co.*, 223 Neb. 403, 390 N.W.2d 487 (1986). In reviewing a judgment awarded in a bench trial of a law action, the Supreme Court does not reweigh evidence but considers the evidence in a light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Zeller v. County of Howard*, 227 Neb. 667, 419 N.W.2d 654 (1988); *Alliance Nat. Bank v. State Surety Co., supra*; *McKinstry v. County of Cass*, 228 Neb. 733, 424 N.W.2d 322 (1988).

## FACTS

Since 1979, Contractor, a masonry contractor, periodically leased scaffolding equipment from Speedway. When Contractor needed scaffolding, its president, Jesse Sutton,

contacted Speedway and ordered scaffolding, which was delivered to the site of Contractor's work. On delivery of scaffolding, Speedway required the signature of a Contractor employee on a written lease and retained the signed original of the lease. Contractor received a copy of the signed lease. Although Speedway sometimes erected scaffolding for other customers, Contractor usually erected the scaffolding by itself.

If Contractor failed to return all the scaffolding at the end of the lease, Speedway continued to charge Contractor rent for the unreturned equipment. However, if Contractor informed Speedway that Contractor would keep the equipment, Speedway billed Contractor for the price of the equipment retained.

In October 1980, Speedway revised the form of its standard lease and used the new form in all lease transactions from that time. The front of the lease form reflected the lessee's name, the type and amount of scaffolding involved, the date when the scaffolding was ordered, and the location where the scaffolding was delivered. The front of the form also had a place for a signature underneath the words "Received Equipment In Good Order and Subject to Conditions of Rental By [blank line]." Immediately beneath the signature line the following was printed in bold uppercase letters: "NOTE: SEE REVERSE SIDE FOR TERMS AND CONDITIONS OF LEASE. ALL WARRANTIES DISCLAIMED." The reverse side of Speedway's revised form contained 18 numbered paragraphs expressing conditions of the lease. Most of the paragraphs were in standard type, with conventional upper and lowercase letters. However, at the center of the reverse side, in uppercase bold print, the following appeared:

11. INDEMNIFICATION: LESSEE SHALL INDEMNIFY AND DEFEND LESSOR AGAINST AND HOLD LESSOR HARMLESS FROM ANY AND ALL CLAIMS, ACTIONS, SUITS, PROCEEDINGS, COSTS, EXPENSES, DAMAGES AND LIABILITIES, INCLUDING ATTORNEY'S FEES WHICH:

(1) RELATE TO INJURY OR TO DESTRUCTION OF PROPERTY, OR BODILY INJURY, ILLNESS, SICKNESS, DISEASE OR DEATH OF ANY PERSON

(INCLUDING EMPLOYEES OF LESSEE), AND;

(2) ARE CAUSED, OR CLAIMED TO BE CAUSED, IN WHOLE OR IN PART BY THE EQUIPMENT LEASED HEREIN OR BY THE LIABILITY OR CONDUCT (INCLUDING ACTIVE, PASSIVE, PRIMARY OR SECONDARY) OF LESSOR, ITS AGENTS OR EMPLOYEES, OR ANYONE FOR WHOSE ACTS ANY OF THEM MAY BE LIABLE. THE PARTIES AGREE THAT LESSOR SHALL ONLY BE LIABLE OR RESPONSIBLE FOR ACTIONS OF WILFUL MISCONDUCT.

LESSEE SHALL, AT ITS OWN COST AND EXPENSE, DEFEND LESSOR AGAINST ALL SUITS OR PROCEEDINGS COMMENCED BY ANYONE IN WHICH LESSOR IS NAMED A PARTY FOR WHICH LESSOR IS ALLEGED TO BE LIABLE OR RESPONSIBLE AS A RESULT OF OR ARISING OUT OF THE EQUIPMENT OR ANY ALLEGED ACT OR OMISSION BY LESSOR, AND LESSEE SHALL BE LIABLE AND RESPONSIBLE FOR ALL COST, EXPENSES AND ATTORNEY'S FEES INCURRED IN SUCH DEFENSE AND/OR SETTLEMENT, JUDGMENT OR OTHER RESOLUTION. IN THE EVENT THAT SUCH ACTION IS COMMENCED NAMING LESSOR AS A PARTY, LESSOR MAY ELECT TO DEFEND ACTION ON ITS OWN BEHALF AND LESSEE AGREES THAT IT SHALL BE LIABLE FOR ALL COSTS, EXPENSES AND ATTORNEY'S FEES INCURRED BY LESSOR IN SUCH DEFENSE.

PURPOSE OF THIS CLAUSE: IT IS THE PURPOSE OF THIS CLAUSE TO SHIFT THE RISK OF ALL CLAIMS RELATING TO THE LEASED PROPERTY TO THE LESSEE DURING THE ENTIRE TERM OF THIS LEASE.

Contractor kept all its copies of Speedway leases in a folder at Contractor's office, where the leases were available for review if needed or desired. On various occasions, Sutton had seen the Speedway leases and read some of the provisions on the back of the lease forms, although he did not recall having read

the indemnity provision contained in paragraph 11 on the reverse side of each Speedway lease. However, Sutton understood the concept and consequences of indemnity. All Contractor employees at the jobsite were authorized to sign the lease form which accompanied scaffolding deliveries from Speedway. Sutton never informed Speedway that Contractor would not accept the indemnity provision in Speedway's leases and never limited the authority of Contractor employees to sign a lease, which always accompanied scaffolding deliveries from Speedway.

After 2 years of periodic leasing from Speedway pursuant to the lease form revised in 1980, Sutton called Speedway on November 17, 1982, and ordered scaffolding under a lease, which was to be delivered by Speedway and erected by Contractor at its jobsite. Speedway delivered the scaffolding as requested. Although the signature on the lease form which accompanied the order is somewhat illegible, Sutton acknowledged that the signature "looks like it was Harvey Cowan," a mason tender for Contractor, who signed the lease bearing the acknowledgment that Cowan had received the scaffolding subject to the conditions on the reverse side of the form.

On November 18, 1982, some of Speedway's scaffolding, which was delivered on November 17, collapsed on account of a failure in the material brackets for the scaffolding and injured Bernard Oddo, one of Contractor's employees. Evidence indicated that Contractor, sometime after November 18, purchased from Speedway the material brackets which were found to be defective. Oddo sued Speedway for negligence and joined Contractor pursuant to Neb. Rev. Stat. § 48-118 (Reissue 1988) to determine Contractor's subrogation interest as the result of workers' compensation benefits paid to Oddo. On the basis of the indemnity agreement in the scaffolding lease, Speedway cross-petitioned against Contractor and sought indemnification for any loss sustained as the result of Oddo's claim.

Two law firms participated in Speedway's defense to Oddo's action. Cassem, Tierney, Adams, Gotch & Douglas of Omaha represented Speedway's primary liability insurance carrier,

Western Insurance Company, which supplied coverage with a $500,000 limit. Niewald, Waldeck, Norris & Brown of Kansas City, Missouri, represented Speedway's excess insurance carrier, Stonewall Insurance Company. Expert testimony showed that separate representation by the two insurance companies was necessary because conflicts between the companies' interests might develop during the litigation. An expert testified that the effort expended on the case and the fees charged by the Niewald, Waldeck firm were fair and reasonable.

Eventually, Speedway settled with Oddo for $1,033,073.82 and incurred attorney fees and other expenses of $81,915.28, including Niewald, Waldeck's fee of $23,203.21, in defense of Oddo's claim. The district court awarded Speedway $1,114,989.10 in its cross-petition against Contractor, the combined amounts of the Oddo settlement and the costs of defense.

## COWAN'S SIGNATURE AND AUTHORITY

Contractor argues that the court erred in finding that Cowan signed the lease for the scaffolding involved in the Oddo accident and in finding that Cowan had authority to bind Contractor to the indemnity provision in the Speedway lease.

Regarding the signature attributable to Cowan as an employee of Contractor, Sutton acknowledged that the signature appeared to be Cowan's. Contractor presented no evidence that Cowan did not sign the lease. The evidence supports the district court's factual conclusion that Cowan signed the Speedway lease.

"An agency is a fiduciary relationship, resulting from one person's manifested consent that another may act on behalf and subject to the control of the person manifesting such consent, and, further, resulting from another's consent to so act." *Dunn v. Hemberger*, 230 Neb. 171, 180, 430 N.W.2d 516, 522 (1988).

The scope of an agent's authority is a question of fact. *Draemel v. Rufenacht, Bromagen & Hertz, Inc.*, 223 Neb. 645, 392 N.W.2d 759 (1986); *T. S. McShane Co. v. Great Lakes Pipe Line Co.*, 156 Neb. 766, 57 N.W.2d 778 (1953). In the relationship of principal and agent, an agent's actual authority is the power to act on the principal's behalf in accordance with

the principal's consent to the agency. See *Farmers Union Coop Assn. v. Commercial State Bank*, 187 Neb. 376, 191 N.W.2d 168 (1971).

Sutton admitted that Cowan had authority to sign documents on behalf of Contractor. Speedway required that its lease form, accompanying any scaffolding ordered, be signed by the recipient when the scaffolding was delivered, which was a longstanding practice between Speedway and Contractor. Thus, evidence supports the factual conclusion that Cowan signed the lease with authority from Contractor. Moreover, Contractor, through Sutton, had ample opportunity to read Speedway's leases before Cowan signed the lease which is the subject of this litigation. One who signs a document without reading it cannot later avoid the effect of the signed document by claiming lack of knowledge concerning the document's contents. *In re Estate of Peterson*, 221 Neb. 792, 381 N.W.2d 109 (1986); *Universal Surety Co. v. Jed Constr. Co., Inc.*, 200 Neb. 712, 265 N.W.2d 219 (1978). For that reason, the court did not err in its finding that Cowan signed the lease with authority to bind Contractor to the indemnity provision contained in the signed lease.

## WORKERS' COMPENSATION AND INDEMNITY

Contractor claims that Neb. Rev. Stat. § 48-148 (Reissue 1988) of the Nebraska Workers' Compensation Act bars Contractor's liability under the indemnity agreement in the Speedway lease. Section 48-148 states:

> If any employee, or his or her dependents in case of death, of any employer subject to the Nebraska Workers' Compensation Act files any claim with, or accepts any payment from such employer, or from any insurance company carrying such risk, on account of personal injury, or makes any agreement, or submits any question to the Nebraska Workers' Compensation Court under such act, such action shall constitute a release to such employer of all claims or demands at law, if any, arising from such injury.

In *Union Pacific RR. Co. v. Kaiser Ag. Chem. Co.*, 229 Neb. 160, 425 N.W.2d 872 (1988), Union Pacific sued Kaiser to

recover under an indemnity agreement for Union Pacific's settlement of a negligence claim by a Kaiser employee, who had received workers' compensation benefits from Kaiser. Kaiser argued that the Nebraska Workers' Compensation Act precluded an employer's contractual liability for indemnification of a tortious third party (Union Pacific) on account of payments made to Kaiser's employee in settlement of the tort claim against Union Pacific. This court rejected Kaiser's argument:

> We find nothing in the Nebraska Workers' Compensation Act, by express provision or implication, and nothing in the public policy of the State of Nebraska, which prevents an employer's contractual obligation to indemnify a third party concerning a loss sustained through the third party's payments to the indemnitor's employee. Therefore, we now hold that when an employer, liable to an employee under the Nebraska Workers' Compensation Act, agrees to indemnify a third party for a loss sustained as the result of the third party's payment to the indemnitor's employee, the employer's exclusion from liability accorded by the Workers' Compensation Act does not preclude the third party's action to enforce the indemnity agreement with the indemnitor-employer. The Union Pacific-Kaiser agreement contains no specific provision or language which excludes, exempts, or exonerates Kaiser from liability for indemnification or contribution as a contractual duty. We decline to rewrite the agreement between Union Pacific and Kaiser and insert a contractual provision precluding Kaiser's liability for indemnification or contribution concerning Union Pacific's settlement with Kaiser's employee, Blomenkamp. Kaiser's claim that the Nebraska Workers' Compensation Act provides exclusive liability and, therefore, immunizes Kaiser from Union Pacific's action to enforce the agreement for indemnification or contribution is without merit.

229 Neb. at 169-70, 425 N.W.2d at 879.

The indemnity agreement between Speedway and Contractor, expressed in paragraph 11 of the scaffolding lease,

contains no specific provision or language which excludes, exempts, or exonerates Contractor from indemnification as a contractual duty. See *Union Pacific RR. Co. v. Kaiser Ag. Chem. Co., supra.*

Nevertheless, Contractor maintains that the language in the indemnification clause of Speedway's lease is unclear and an ineffective circumvention of the exclusivity otherwise attendant to claims governed by the Nebraska Workers' Compensation Act, and which, Contractor argues, allows Speedway's indemnity recovery for its own negligence.

"An indemnity agreement is a contract to be construed according to the principles generally applied in construction or interpretation of other contracts." *Union Pacific RR. Co., supra* at 170, 425 N.W.2d at 879. See, also, *Peter Kiewit Sons Co. v. O'Keefe Elevator Co., Inc.*, 191 Neb. 50, 213 N.W.2d 731 (1974); *First Trust Co. v. Airedale Ranch & Cattle Co.*, 136 Neb. 521, 286 N.W. 766 (1939). " 'An indemnitee may be indemnified against his own negligence if the contract contains express language to that effect or contains clear and unequivocal language that that is the intention of the parties.' " *Omaha P. P. Dist. v. Natkin & Co.*, 193 Neb. 518, 522, 227 N.W.2d 864, 867 (1975) (quoting *Peter Kiewit Sons Co. v. O'Keefe Elevator Co., Inc., supra*).

The indemnity clause in the Speedway lease provided that Contractor would indemnify Speedway for claims arising out of Speedway's "CONDUCT (INCLUDING ACTIVE, PASSIVE, PRIMARY OR SECONDARY)." In addition, the clause stated that the "LESSOR SHALL ONLY BE LIABLE OR RESPONSIBLE FOR ACTIONS OF WILFUL MISCONDUCT." Finally, the lease declared that the purpose of the indemnity clause was "TO SHIFT THE RISK OF ALL CLAIMS RELATING TO THE LEASED PROPERTY TO THE LESSEE DURING THE ENTIRE TERM OF THIS LEASE." Although the lease's indemnity clause does not contain the word *negligence*, the intended consequence of indemnity is expressed clearly and unequivocally—Contractor was obligated to indemnify Speedway concerning claims arising from Speedway's conduct, including negligence, but excluding claims based on Speedway's willful misconduct.

## STATUTORY LIABILITY FOR SCAFFOLDS

Contractor asserts that its agreement to indemnify Speedway is unenforceable to the extent that Contractor has agreed to indemnify Speedway for a breach of Speedway's duty under Neb. Rev. Stat. § 48-425 (Reissue 1988), which provides:

> All scaffolds, hoists, cranes, stays, ladders, supports or other mechanical contrivances used in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct or other structure, shall be erected and constructed in a safe, suitable and proper manner. Scaffolding or staging, swung or suspended from an overhead support and more than twenty feet from the ground floor, shall have, where practicable, a safety rail properly bolted, secured and braced, rising at least thirty-four inches above the floor or main portion of such scaffolding or staging, and extending along the entire length of the outside and ends thereof and properly attached thereto, and such scaffolding and staging shall be so fastened as to prevent the same from swaying from the building or structure.

As a result of § 48-425, one who erects, constructs, maintains, or supplies scaffolding must see that the scaffolding is erected and constructed in a safe, suitable, and proper manner. *Hand v. Rorick Constr. Co.*, 190 Neb. 191, 206 N.W.2d 835 (1973). Breach of the duty imposed by § 48-425 constitutes negligence per se, not merely evidence of negligence. *Johnson v. Weborg*, 142 Neb. 516, 7 N.W.2d 65 (1942). See, also, *Winterson v. Pantel Realty Co.*, 135 Neb. 472, 282 N.W. 393 (1938); *Stevens v. Luther*, 105 Neb. 184, 180 N.W. 87 (1920).

Speedway, as a supplier of scaffolding, had a duty to supply scaffolding constructed in a "safe, suitable and proper manner." However, notwithstanding the duty imposed by § 48-425, Speedway could obtain indemnification against a breach of its duty, that is, Speedway may, and did, contract for indemnification against its own negligence regarding a scaffold which it supplied. See, *Omaha P. P. Dist. v. Natkin & Co., supra*; *Peter Kiewit Sons Co. v. O'Keefe Elevator Co., Inc., supra*. Under the circumstances of this case, nothing precludes

contractual indemnification simply because Speedway's loss, for which it sought indemnification from Contractor, may have arisen out of the breach of a statutory duty rather than breach of a duty at common law. Thus, § 48-425 does not preclude indemnification against a breach of the statutory duty concerning scaffolding.

## LEASE OR SALE

Contractor argues that the defective material brackets which caused the Oddo accident were not covered by the lease agreement because Contractor eventually purchased the brackets. The uncontroverted evidence shows that the brackets were originally leased from Speedway and remained as parts of the leased equipment until Contractor informed Speedway that Contractor wished to purchase the brackets after the Oddo accident. There is no evidence that Contractor made any attempt to purchase the brackets before Oddo's accident. Contractor's argument regarding the defective material brackets has no support in the record and is entirely without merit.

## ATTORNEY FEE

Finally, Contractor contends that it is not liable for the attorney fee of Niewald, Waldeck, which, Contractor argues, had no part in achieving the settlement with Oddo, since Speedway was already represented by the attorneys for Speedway's primary liability insurance carrier. Speedway's lease to Contractor states that, regarding defense of an action against the lessor, the lessee "SHALL BE LIABLE FOR ALL COSTS, EXPENSES AND ATTORNEY'S FEES INCURRED BY LESSOR IN SUCH DEFENSE." A factual question concerning damages recoverable in an action on an indemnity agreement, whether such question involves causation or amount of damages, is a matter for the fact finder. See *Insurance Co. of North America v. Hawkins*, 197 Neb. 126, 246 N.W.2d 878 (1976). See, also, *Bankers Surety Co. v. Cross*, 100 Neb. 98, 158 N.W. 457 (1916). Contractor's claim regarding the attorney fee in this case is without merit.

## CONCLUSION
The judgment for Speedway Scaffold Company is supported by the evidence and is, therefore, affirmed.

AFFIRMED.